EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Joshua Anthony Roche<br><br>Recurrido | 2016 TSPR 124<br><br>195 DPR \_\_\_\_ |

Número del Caso: CC-2014-475

Fecha: 15 de junio de 2016

Tribunal de Apelaciones:

      Región Judicial de Ponce, Panel VII

Oficina de la Procuradora General:

      Lcda. Margarita Mercado Echegaray
      Procuradora General

      Lcda. Karla Z. Pacheco Álvarez
      Subprocuradora General

      Lcda. Tanaira Padilla Rodríguez
      Subprocuradora General

      Lcdo. Iván E. Rivera Labrador
      Procurador General Auxiliar

Abogado del Recurrido:

      Lcdo. Carlos J. García Morales

Materia: Derecho Penal- Asesinato en Segundo grado no prescribe bajo el Código Penal de 2004, ni bajo el Código Penal de 2012 vigente.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       v.                     CC-2014-475     *Certiorari*

Joshua Anthony Roche

    Recurrido

Opinión del Tribunal emitida por el Juez Asociado SEÑOR FELIBERTI CINTRÓN

En San Juan, Puerto Rico, a 15 de junio de 2016.

Existen delitos que son considerados tan inherentemente graves y perjudiciales al bienestar del colectivo, que el Estado ha conservado la facultad de perseguir a aquel que incurra en su comisión sin límite de tiempo. El Código Penal de 2004 establecía,[1] entre otros, que el delito de asesinato no prescribía. Hoy nos toca determinar si el término "asesinato", según el mismo se encuentra plasmado en el Art. 100 de dicho cuerpo normativo,[2] cobija al asesinato en segundo grado. Adelantamos que sí. Veamos.

---

[1]    33 LPRA ant. sec. 4629 *et seq*. (2010 y Supl. 2015).

[2]    33 LPRA ant. sec. 4728 (2010 y Supl. 2015).

I

Por hechos ocurridos el 1 de abril de 2007, el 25 de noviembre de 2013 se halló causa para acusar al Sr. Joshua Anthony Roche (señor Roche o recurrido) por el delito de asesinato en segundo grado, según tipificado en el Art. 106 del Código Penal de 2004 (**Art. 106**),[3] en adición a dos (2) cargos por infracción al Art. 5.04 de la Ley de Armas de Puerto Rico.[4] Luego de que el Ministerio Público presentara las correspondientes acusaciones,[5] el 12 de marzo de 2014 el señor Roche sometió una *Moción de Desestimación* ante el Tribunal de Primera Instancia. En la misma adujo que el término provisto en ley para encausarlo por los delitos imputados es de cinco (5) años. Alegó que habían transcurrido aproximadamente seis (6) años y seis (6) meses desde la fecha en que ocurrieron los alegados hechos hasta la presentación de las denuncias y la determinación de causa para arresto,[6] por lo que la acción estaba prescrita. Como consecuencia, solicitó la desestimación de los correspondientes pliegos acusatorios.

Atendiendo el planteamiento del señor Roche, el 26 de marzo de 2014 el Tribunal de Primera Instancia emitió una Minuta-Resolución desestimando por prescripción los dos

---

[3]     33 LPRA ant. sec. 4734 (2010 y Supl. 2015).

[4]     25 LPRA sec. 458c (Supl. 2015).

[5]     Las tres (3) acusaciones fueron presentadas por el Ministerio Público el 27 de febrero de 2014.

[6]     Las denuncias se presentaron el 11 de octubre de 2013.

(2) cargos por infracción al Art. 5.04 de la Ley de Armas, mas no así el cargo por el delito de asesinato en segundo grado. El foro primario determinó que, conforme al Art. 100 del Código Penal de 2004, *supra* (**Art. 100**), el delito de asesinato no prescribe.

Inconforme con aquella parte de la Minuta-Resolución en la que se decretó la no prescripción del delito de asesinato en segundo grado, el señor Roche recurrió mediante recurso de *certiorari* ante el Tribunal de Apelaciones. Argumentó, entre otras cosas, que el Art. 100, el cual detalla los delitos imprescriptibles, adolece de vaguedad al no especificar qué tipo de asesinato no prescribe. Adujo que, en consecuencia, el término para entablar la acción penal por asesinato en segundo grado debe ser el de cinco (5) años dispuesto en el inciso (a) del Art. 99 del Código Penal de 2004 (**Art. 99**),[7] aplicable a los delitos graves de segundo a cuarto grado. Solicitó, por lo tanto, que se dejara sin efecto la determinación del foro de instancia en tanto y en cuanto no desestimó la acusación por dicho delito.

En oposición, la Procuradora General (Procuradora o peticionaria) planteó que al Art. 100 disponer que el asesinato no prescribe se refiere al Art. 105 del Código

---

[7]    33 LPRA ant. sec. 4727 (2010 y Supl. 2015).

Penal de 2004 (**Art. 105**) titulado "Asesinato".[8]  Indicó, a su vez, que el Art. 105 define en términos generales el delito de asesinato, incluyendo los dos (2) elementos básicos comprendidos en los grados del delito: (1) dar muerte a un ser humano, (2) con intención de causársela. Es decir, que el asesinato es un solo delito (Art. 105), pero dividido en grados conforme al Art. 106. Consecuentemente argumentó que el Art. 100 es aplicable a ambas modalidades.  Es decir, al asesinato en primer grado y al asesinato en segundo grado.  Sostuvo, además, que si la intención del legislador hubiese sido que dicho apartado sólo aplicara al asesinato en primer grado, bastaría con disponer que los delitos de primer grado no prescriben.  No obstante, el Art. 100 establece que no prescribe tanto el "delito grave de primer grado", donde está comprendido el asesinato en primer grado, así como el "asesinato".  Esto, según la Procuradora, tuvo el fin de incluir todos los grados del delito.

Evaluados los argumentos de ambas partes, el 20 de mayo de 2014 el Tribunal de Apelaciones dictó Sentencia revocando la Minuta-Resolución emitida por el foro primario y decretando la desestimación del cargo de asesinato en segundo grado por prescripción.  Entendió el

---

**8**     El Art. 105 del Código Penal de 2004 dispone: "Asesinato es dar muerte a un ser humano con intención de causársela".  33 LPRA ant. sec. 4733 (2010 y Supl. 2015).

foro revisor que el periodo aplicable a dicho delito, para efectos de la prescripción, es el de cinco (5) años, según dispuesto en el Art. 99.

No conforme con la determinación antes referida, el 20 de junio de 2014 la Procuradora acudió ante nos. Señaló que el foro apelativo intermedio erró al revocar la determinación del Tribunal de Primera Instancia y resolver que bajo el Código Penal de 2004 el delito de asesinato en su modalidad de segundo grado prescribe a los cinco (5) años.

Mediante Resolución emitida el 12 de diciembre de 2014 expedimos el auto de *certiorari* solicitado. Como bien adelantamos, luego de analizar el derecho aplicable, así como la postura esgrimida por ambas partes en sus respectivas comparecencias, revocamos la determinación del Tribunal de Apelaciones y resolvemos que, conforme a la letra clara del Art. 100, el asesinato en segundo grado no prescribe.[9] Veamos.

II

**A. Asesinato**

Desde el 1902, el Derecho Penal Puertorriqueño ha estado regido por cuatro códigos penales. El Código Penal de 1902 fue prácticamente una traducción al español del

---

[9]    Cabe señalar que aunque las provisiones del ya derogado Código Penal de 2004 son las aplicables a los hechos presentes en el recurso de epígrafe, nuestros pronunciamientos en esta Opinión son de igual aplicación al amparo del nuevo Código Penal de 2012 por tratarse de disposiciones similares.

Código Penal de California, edición de 1873. Luego de un largo y lento proceso de reforma penal, mediante la Ley Núm. 115 de 22 de julio de 1974 se aprobó el Código Penal de 1974. En el 2001, por medio de la Resolución del Senado 203, se le ordenó a su Comisión de lo Jurídico llevar a cabo una revisión, que culminó en el Código Penal de 2004, Ley Núm. 148-2004. Finalmente, en el 2012 se aprobó el Código Penal vigente, el cual ha sido objeto de enmiendas, como por ejemplo, las incorporadas recientemente por medio de la Ley Núm. 246-2014. D. Nevares-Muñiz, Derecho Penal Puertorriqueño-Parte General, 7ma ed. rev., San Juan, Instituto para el Desarrollo del Derecho, Inc., 2015, pág. 68.

En todos y cada uno de los aludidos ordenamientos penales se ha tratado el delito de asesinato como un solo delito (Art. 105-CP 2004),[10] pero dividido en grados.[11] Se

---

[10] El Asesinato como delito autónomo fue regulado por primera vez por el Código Penal Español de 1870, aplicado a nuestra jurisdicción a partir de 1879 mediante el Real Decreto de 23 de mayo del mismo año. "La figura delictiva equivalente a lo que se conoce en la tradición anglosajona como asesinato en segundo grado, esto es, la modalidad no agravada sería el homicidio". (Nota al calce omitida). J. Granados Peña, El delito de asesinato en segundo grado entre el homicidio involuntario y el preterintencional: comentarios en torno a la propuesta de revisión del Código Penal de Puerto Rico, 61 (Núm. 3) Rev. Jur. UPR 361, 365 (1992).

[11] La división en grados del delito de asesinato, introducida en nuestro ordenamiento jurídico a partir del Código Penal de 1902, se adoptó de la Ley de Homicidios de 1794 del Estado de Pennsylvania. D. Nevares-Muñiz, Código Penal de Puerto Rico, San Juan, Instituto para el Desarrollo del Derecho, Inc., 2012, pág. 145. Granados Peña, supra, pág. 368. Véase, además, Pueblo v. Concepción Guerra, 2015 TSPR 162, pág. 15 esc. 6, 194 DPR ___ (2015).

agrupan en la definición de asesinato todas aquellas modalidades en las que exista la **intención** de matar.[12]

En lo pertinente a la controversia ante nos, el Art. 105 define el delito de asesinato en términos generales, disponiendo que "[a]sesinato es dar muerte a un ser humano con intención de causársela".[13] Acto seguido dicho cuerpo normativo precisa los elementos del delito de asesinato en

---

[12] De hecho, lo que se conocía como el delito de Homicidio en el Código Penal de 1974 (Art. 85), pasó a ser Asesinato Atenuado en el Código Penal de 2004 (Art. 108) por el elemento de la intención. En el Informe sobre el P. del S. 2302 sometido por la Comisión de lo Jurídico ante el Senado de Puerto Rico el 22 de junio de 2003, citando a la Academia Puertorriqueña de Jurisprudencia y Legislación, se señaló, al respecto:

> La verdadera naturaleza de esta clase de muertes es la de ser asesinatos atenuados por las circunstancias de súbita pendencia o arrebato de cólera. **Si exigen, como así es, la intención de matar —de otro modo serían homicidios involuntarios— caben en la definición de asesinato del Artículo 105**. (Énfasis Suplido).

[13] Los Códigos Penales de 1902 y 1974, los cuales rigieron en nuestro ordenamiento jurídico previo al Código Penal de 2004, tipificaron el delito de asesinato en los siguientes términos:

**Código Penal de 1902**

> Art. 199- Asesinato es dar muerte ilegal, [a] un ser humano, con malicia y premeditación.

> Art. 201- Todo asesinato perpetrado por medio de veneno, acecho, [o] tortura, y toda clase de muerte alevosa, deliberada y premeditada, [o] cometida al perpetrarse [o] intentarse algún incendio de morada, rapto, robo, asalto, [o] mutilación, constituye asesinato de primer grado; siendo de segundo grado todos los demás.

33 LPRA ant. secs. 631 y 633 (1969), respectivamente.

**Código Penal de 1974**

> Art. 81- Asesinato es dar muerte a un ser humano con malicia premeditada.

> Art. 82- Todo asesinato perpetrado por medio de veneno, acecho o tortura, y toda clase de muerte alevosa, deliberada y premeditada, o cometida al perpetrarse o intentarse algún incendio de morada, violación, sodomía, robo, escalamiento, secuestro, estragos, o mutilación constituye asesinato en primer grado, siendo de segundo grado todos los demás.

33 LPRA ant. secs. 4001 y 4002 (2001), respectivamente.

su modalidad de primer y segundo grado de la siguiente

manera:

§ 4734. Grados de asesinato

Constituye asesinato en primer grado:

(a) Todo asesinato perpetrado por medio de veneno, acecho o tortura, o con premeditación.
(b) Todo asesinato que se comete como consecuencia natural de la consumación o tentativa de algún delito de incendio agravado, agresión sexual, robo, escalamiento agravado, secuestro, secuestro de un menor, estrago, envenenamiento de aguas de uso público, agresión grave en su modalidad mutilante, fuga, maltrato intencional o abandono de un menor.
(c) Todo asesinato de un miembro de la Policía, guardia escolar, guardia o policía municipal, alguacil, fiscal, procurador de menores, procurador de familia especial para situaciones de maltrato, juez u oficial de custodia que se encuentre en el cumplimiento de su deber, cometido al consumar, intentar o encubrir un delito grave.

Toda otra muerte intencional de un ser humano constituye asesinato en segundo grado. Art. 106 del Código Penal de 2004, 33 LPRA ant. sec. 4734 (2010 y Supl. 2015).

Además del asesinato en primer y segundo grado, el

Código Penal de 2004 también tipifica, en su Art. 108, el

asesinato atenuado, es decir, aquel en el cual el sujeto

activo actúa en ocasión de súbita pendencia o arrebato de

cólera. Art. 108 del Código Penal de 2004, 33 LPRA ant.

sec. 4736 (2010).

## B. Prescripción

La figura de la prescripción en el derecho penal

supone la extinción de la acción penal por el transcurso

del tiempo.[14]   P. Malavet Vega, Manual de Derecho Penal Puertorriqueño, Mayagüez, Puerto Rico, Ediciones Barco de Papel, 1997, pág. 414.   En consecuencia, la prescripción obliga al Estado a iniciar la acción en el término dispuesto en ley, no sólo por el interés y la política pública de perseguir a los autores de los delitos, sino además para permitir al imputado obtener la evidencia necesaria para una defensa efectiva.   Íd.   Ello en consonancia con el derecho del acusado a un debido proceso de ley y de brindarle una oportunidad razonable para levantar sus defensas.   Íd.

> El propósito fundamental de la disposición fijando un término de prescripción es informar al acusado con suficiente anticipación de la intención de procesársele y de la naturaleza del delito que se le imputa, de forma que no se menoscabe su oportunidad de defenderse antes de que la evidencia disponible para establecer su inocencia desaparezca o se oblitere con motivo del transcurso del tiempo.  Pueblo v. Tribunal Superior, 84 DPR 24, 27 (1961).  Véase, además, Pueblo v. Pérez Pou, 175 DPR 218, 238 (2009) y Pueblo v. Guardiola Dávila, 130 DPR 585, 591-592 (1992).

No obstante, lo anterior no impide que, por razones de interés público, el Estado disponga que algunos delitos no habrán de prescribir.   Malavet Vega, op. cit.   Con el

---

[14]   La prescripción se incorporó como causa de extinción de la acción penal en el Art. 77 del Código Penal de 1974 por virtud de la Ley Núm. 101 de 4 de junio de 1980, únicamente con relación a aquellos delitos cometidos a partir del 3 de marzo de 1981.  Respecto a los delitos cometidos con anterioridad al 3 de marzo de 1981 la prescripción era causa de desestimación del pliego acusatorio a base de la Regla 64m de Procedimiento Criminal, por lo que si no se alegaba oportunamente se renunciaba.  En el Código Penal de 2004 se mantuvo como causal de extinción de la acción penal.  D. Nevares-Muñiz e Y. Sierra Ramos, Extinción de las Acciones y de las Penas y de la Prescripción, Documento de Trabajo, Revisión del Código Penal, Comisión de lo Jurídico, Senado de Puerto Rico, Mayo de 2002.

fin de establecer cuáles delitos no prescriben se suele tomar en cuenta la gravedad del delito y los valores sociales o jurídicos envueltos. Íd. Es decir, no sólo los delitos graves tienen términos prescriptivos mayores por constituir una afrenta a la sociedad, sino que hay algunos que tienen un efecto tan nocivo sobre los cimientos de la vida en comunidad que el legislador ha dispuesto que no prescriban. Pueblo v. Martínez Rivera, 144 DPR 631 (1997).

> El Estado retiene su facultad, dentro de su obligación de preservar la paz y el orden social, de negar prescriptibilidad a los delitos que por su intensidad de agravio a la sociedad organizada, deban en cualquier tiempo exponerse a la depuración del proceso judicial. Rabell Martínez v. Tribunal Superior, 102 DPR 39, 42 (1974).

No obstante, dicha facultad no debe propender a que el Estado se cruce de brazos y no someta los cargos, estando en posición de hacerlo, fundamentado en el hecho de que el delito no prescribe. O.E. Resumil, Derecho Procesal Penal: Limitaciones Constitucionales al Ejercicio del *Ius Puniendi*, 71 Rev. Jur. UPR 547, 552 (2002).

Similar al Código Penal vigente,[15] el Código Penal de 2004 disponía, en su Art. 100, que:

---

[15] Específicamente, el Código Penal de 2012 enuncia en su Art. 81 lo siguiente:

> En los siguientes delitos la acción penal no prescribe: genocidio, crimen de lesa humanidad, asesinato, secuestro y secuestro de menores, malversación de fondos públicos, falsificación de documentos públicos, y todo delito grave tipificado en este Código o en ley especial cometido por un funcionario o empleado público en el desempeño de la función pública. 33 LPRA sec. 5133 (Supl. 2015).

[e]n los siguientes delitos la acción penal no prescribe: delito grave de primer grado, genocidio, crimen de lesa humanidad, asesinato, secuestro, y secuestro de menores, malversación de fondos públicos, falsificación de documentos públicos y todo delito grave tipificado en este Código o en ley especial cometido por un funcionario o empleado público en el desempeño de la función pública.

Cuando el legislador dispuso para la no prescripción del delito de asesinato protegió el bien jurídico más valioso que puede existir: la vida humana. S.A. Silva Sernaqué, Derecho Penal-Parte Especial, Mayagüez, Puerto Rico, Ediciones Hostos, 2007, págs. 58 y 59. Así lo ha reconocido LaFave, al expresar:

It is commonly provided that a few of the most serious offenses, **usually murder** and treason, have no statute of limitations. The exceptions may serve 'simply to emphasize the fact that [such crimes are] viewed with general apprehension on the part of the citizens'. (Énfasis suplido y corchetes en el original). Pueblo v. Martínez Rivera, *supra*, pág. 639, citando a LaFave and Israel, Criminal Procedure, Sec. 18.5, pág. 424 (1984).

Con relación al delito de asesinato, en el inciso (d) del Art. 99 del Código Penal de 2004 se dispone, además, que "[l]os delitos de encubrimiento y conspiración prescribirán a los diez (10) años cuando se cometan en relación al delito de asesinato en todas sus modalidades".

**C. Interpretación**

En cualquier instancia, el aplicar las disposiciones jurídicas pertinentes a la situación fáctica o procesal de un caso, supone un ejercicio de interpretación. D.

Nevares-Muñiz, Derecho Penal Puertorriqueño, Parte General, op. cit., pág. 111. R. Elfren Bernier y J.A. Cuevas Segarra, Aprobación e Interpretación de las Leyes en Puerto Rico, San Juan, Publicaciones JTS, Inc., 1987, pág. 241. La hermenéutica legal, es decir, el proceso mediante el cual se interpretan las leyes, tiene el propósito de precisar qué es lo que ha querido decir el legislador. Elfren Bernier y Cuevas Segarra, op. cit., pág. 241. Al realizar dicha faena, no tenemos que necesariamente limitarnos al texto de la ley, sino que podemos auscultar el contexto de sus términos y cuál era la intención del legislador al aprobarla. Nevares-Muñiz, Derecho Penal Puertorriqueño, Parte General, op. cit., págs. 109-110.

En lo atinente a la controversia legal que nos atañe, no existe ningún precepto constitucional que le imponga al Estado la obligación de fijar términos de prescripción para los delitos. En el ámbito penal la figura jurídica de la prescripción tiene un origen puramente estatutario.

Acorde a lo antes intimado, enfocamos nuestra atención en las disposiciones del Código Penal de 2004 concernientes al asunto de la interpretación, y en aquellas relativas a los términos de prescripción.

El Art. 13 del Código Penal de 2004, 33 LPRA ant. sec. 4641 (2010 y Supl. 2015) (**Art. 13**), establecía, en

cuanto a la interpretación de las disposiciones del Código

Penal,[16] que:

> Las palabras y frases se interpretarán según el contexto y el significado sancionado por el uso común y corriente.
>
> Las voces usadas en este Código en el tiempo presente incluyen también el futuro; las usadas en el género masculino incluyen el femenino y el neutro, salvo los casos en que tal interpretación resulte absurda; el número singular incluye el plural y el plural incluye el singular.
>
> **Si el lenguaje empleado es susceptible de dos o más interpretaciones, debe ser interpretado para adelantar los propósitos de este Código y del Artículo particular objeto de interpretación.** (Énfasis nuestro).

Según la Dra. Dora Nevares-Muñiz, el primer párrafo

de dicho precepto legal adopta la interpretación

gramatical y la interpretación declarativa. "La

interpretación gramatical se refiere a que el juez habrá

de examinar el significado gramatical de las palabras y la

---

[16] El Código Penal de 2012, vigente, mantuvo esencialmente estos principios, pero dividió las disposiciones relativas a la interpretación en dos (2) artículos que leen como sigue:

**§ 5012. Interpretación de palabras y frases**

Las palabras y frases se interpretarán según el contexto y el significado sancionado por el uso común y corriente.

Las voces usadas en este Código en el tiempo presente incluyen también el futuro; las usadas en el género masculino incluyen el femenino y el neutro, salvo los casos en que tal interpretación resulte absurda; el número singular incluye el plural y el plural incluye el singular.

**§ 5013. Alcance de la interpretación**

Si el lenguaje empleado en un estatuto es susceptible de dos o más interpretaciones, debe ser interpretado para adelantar los principios establecidos en este Código y la protección del bien tutelado en el artículo particular objeto de interpretación, pero siempre tomando como base el principio de responsabilidad penal.

Arts. 12 y 13 del Código Penal de 2012, 33 LPRA secs. 5012 y 5013, respectivamente (Supl. 2015).

sintaxis de las oraciones en la ley. Si el análisis revela una interpretación clara ahí habrá de concluir la interpretación." D. Nevares-Muñiz, <u>Código Penal de Puerto Rico</u>, San Juan, Instituto para el Desarrollo del Derecho, Inc., 2012, pág. 19. Por otro lado, mediante la interpretación declarativa el juez, al aplicar la disposición a la situación de hechos, busca establecer una correspondencia exacta entre la letra de la ley y el espíritu que la inspira. <u>Íd.</u>

En palabras de la doctora Nevares-Muñiz, el Art. 13 admite, además, la interpretación restrictiva – es decir, aquella en la que se limita el análisis al entendimiento estricto de las palabras de la ley por entenderse que las mismas son la única expresión de la voluntad del legislador – y la interpretación extensiva – esto es, la que equivale a interpretar los términos de la ley según el espíritu y voluntad de la misma. D. Nevares Muñiz, <u>Código Penal de Puerto Rico</u>, <u>op. cit.</u>, pág. 19.

El Dr. Luis Ernesto Chiesa, por su parte, opina que debe descartarse el análisis restrictivo y extensivo. Sugiere, en su lugar, que corresponde enfocarse más bien en el significado razonable del texto en cuestión, en función tanto de la finalidad del derecho penal en su acepción amplia como del precepto específico que se interpreta. En el artículo titulado <u>Derecho Penal Sustantivo</u> publicado en la Revista Jurídica de la

Universidad de Puerto Rico, 81 Rev. Jur. UPR 343, 358 (2012), reconoce que el tercer párrafo del Art. 13 provino de la Sec. 1.02 (3) del Código Penal Modelo. Conforme a lo anterior manifestó:

> Resulta lógico, por tanto, concluir que el propósito del artículo 13 ha de ser el mismo que el de la sección 1.02 (3) del Código Penal Modelo: abolir la regla de interpretación restrictiva de los estatutos penales y sustituirla con la regla de interpretación según el justo sentido de los términos. […] [D]e conformidad con dicha regla, las reglas penales deben interpretarse de manera que se adelanten los propósitos del derecho penal en general y de la disposición objeto de interpretación en particular, independientemente de si dicha interpretación es restrictiva o extensiva. L.E. Chiesa, Derecho Penal Sustantivo, 81 Rev. Jur. UPR 343, 358 (2012).

Cónsono con lo anterior, es de todos conocido que uno de los principios cardinales de hermenéutica es aquel que establece que a las disposiciones de una ley se le debe brindar la interpretación que valida el propósito que tuvo el legislador al aprobar la misma. Pueblo v. Martínez Rivera, *supra*, pág. 647. Aunque reiteradamente hemos afirmado que los estatutos penales deben ser interpretados restrictivamente en cuanto a lo que desfavorece al acusado y liberalmente en cuanto a lo que lo favorezca, ello será en la medida en que lo permita el lenguaje de la ley y las circunstancias de su aplicación, así como el espíritu y la intención del estatuto. Íd., págs. 647-648. Al adjudicar las controversias que nos son presentadas, debemos interpretar las leyes de forma tal que se cumpla

cabalmente con la intención legislativa. Elfren Bernier y Cuevas Segarra, op. cit., págs. 241-242; Pueblo v. Zayas Rodríguez, 147 DPR 530 (1999).[17]

Es necesario tener presente, además, que el escrutinio de una disposición penal debe realizarse de manera integrada para evitar resultados absurdos. Boys and Girls Club v. Srio. de Hacienda, 179 DPR 746 (2010). "[L]a interpretación del estatuto penal no debe aislarse de las restantes disposiciones de la ley ni del ordenamiento penal, como tampoco de la realidad social donde surge y opera." Íd., pág. 756 (citas omitidas); Pueblo v. Figueroa Pomales, 172 DPR 403, 417 (2007). Por ello, las leyes tienen que ser analizadas en consonancia con el propósito social que las inspira y en sintonía con la realidad y el problema humano que persiguen resolver. Pueblo v. Zayas Rodríguez, supra.

III

La controversia planteada mediante el presente recurso se reduce a determinar si el asesinato en segundo grado no prescribe.

En primer lugar, debemos afirmar que en este caso no sólo la disposición legal en cuestión es clara en cuanto a que el **delito de asesinato** no prescribe, sin limitarlo a

---

[17] El texto del Art. 13 del Código Penal de 2004, según redactado, hace vinculante la jurisprudencia que se produjo bajo el Código Penal de 1974, el cual igualmente admitía la interpretación restrictiva y la extensiva en tanto y en cuanto correspondiera a la intención legislativa.

algún grado en particular, sino que interpretada a la luz de varias otras consideraciones se hace aún más evidente cuál fue la verdadera intención del legislador.  Veamos.

Según apreciamos con anterioridad, el delito de asesinato, según tipificado en el Código Penal de 2004, así como en el vigente y los que le precedieron, es uno solo, pero dividido en grados.[18]  Si recurrimos al propio Código Penal de 2004 para examinar cuál es la definición de asesinato, no hacemos sino que toparnos con el Art. 105 que dispone que asesinato es: "[d]ar muerte a un ser humano con intención de causársela".  Aun cuando a través de los códigos penales previos ha variado la terminología utilizada para definir el delito, consistentemente se ha mantenido un artículo donde éste se define y otras disposiciones separadas que establecen sus distintas gradaciones.  Por lo tanto, cuando se colocó el delito de asesinato en el listado de delitos imprescriptibles comprendidos en el Art. 100 sin incluir ninguna gradación del mismo, indudablemente se hizo en consideración al delito en general, según el mismo se encuentra codificado en el Art. 105 del Código Penal de 2004.  Confirma dicha conclusión el hecho de que el Art. 100 del Código Penal de 2004, además de incluir al asesinato como uno de los

---

**18**    Véase, por ejemplo, Pueblo v. Rivera Alicea, 125 DPR 37, 44 (1989), donde expresamos: "**El asesinato constituye un solo delito**- dar muerte a un ser humano con malicia premeditada, […]- que se divide en grados en atención a la perversidad demostrada por el acusado al cometer el acto y al sólo efecto de la imposición de la pena".  (Énfasis nuestro y citas omitidas).

delitos que no prescriben, dispone, igualmente, que el "delito grave de primer grado" no prescribe. De ese modo, si la intención del legislador hubiese sido que sólo el asesinato en primer grado no prescribiera, hubiese sido suficiente con establecer la no prescripción del delito grave de primer grado, clasificación que ampara el asesinato en primer grado.

Por otro lado, cabe señalar que el Código Penal de California, de donde surge nuestro Código Penal de 1902,[19] disponía en su Sec. 799 lo siguiente:

> **There is no limitation of time within which a prosecution for murder**, the embezzlement

_____

[19] Como mencionamos anteriormente, nuestro Código Penal de 1902 fue prácticamente una traducción al español del Código Penal de California, edición de 1873, actualizado al 1901. A partir del Código Penal de 1902, todos los códigos penales que han regido en nuestro ordenamiento jurídico han establecido, de igual manera, que el delito de asesinato no prescribe. Véanse, al respecto, el Art. 77 del Código Penal de 1902, 33 LPRA sec. 231 (1969), el Art. 78 del Código Penal de 1974, 33 LPRA sec. 3412 (2001), el Art. 100 del Código Penal de 2004, 33 LPRA sec. 4728 (2010), y el Art. 88 del Código Penal de 2012, 33 LPRA sec. 5133 (Supl. 2015), los cuales citamos a continuación en su parte pertinente:

Art. 77 del Código Penal de 1902-

> **Podrá ejercitarse la acción penal en cualquier tiempo, sin limitación, por los delitos de asesinato** o malversación de caudales del erario y falsificación de documentos públicos. (Énfasis nuestro).

Art. 78 del Código Penal de 1974-

> La acción penal prescribirá:

> (a) A los cinco (5) años en los delitos graves, **salvo los delitos de asesinato,** malversación de fondos públicos, secuestro, robo de niños y falsificación de documentos públicos **que no prescriben**. (Énfasis nuestro).

Art. 100 del Código Penal de 2004-

> **En los siguientes delitos la acción penal no prescribe:** delito grave de primer grado, genocidio, crimen de lesa humanidad, **asesinato** […]. (Énfasis nuestro).

Art. 88 del Código Penal de 2012-

> **En los siguientes delitos la acción penal no prescribe:** genocidio, crimen de lesa humanidad, **asesinato** […]. (Énfasis nuestro).

of public moneys, and the falsification of public records **must be commenced. Prosecution for murder may be commenced at any time after the death of the person killed,** and for the embezzlement of public money or the falsification of public records, at any time after the discovery of the crime. (Énfasis nuestro).

En las notas al calce de la referida disposición legal se aclaró: **"As against the crime of murder there is no limitation, <u>whether it be of the first or second degree</u>".** (Énfasis nuestro y cita omitida).

Además de lo antes intimado, existen otras consideraciones que apoyan la decisión a la que hoy arribamos. Veamos.

El Art. 78 del Código Penal de 1974, el cual de igual modo proveía para la no prescripción del delito de asesinato,[20] fue enmendado por medio de la Ley Núm. 118-1996 (1996 Leyes de Puerto Rico 529) a los fines de **aumentar a diez (10) años** el término de prescripción de los delitos de conspiración y encubrimiento cuando los mismos se cometieran en relación al delito de asesinato **en todas sus modalidades.**[21] Uno de los propósitos de dicha legislación fue **"lograr un mayor número de convicciones**

---

[20]   Del mismo modo disponía que los delitos graves prescribían a los cinco (5) años.

[21]   La disposición relativa al término prescriptivo de diez (10) años en cuanto a los delitos de encubrimiento y conspiración cuando los mismos se cometan en relación al delito de asesinato en todas sus modalidades se mantuvo vigente en el Código Penal de 2004.

**contra delincuentes que han cometido asesinato.**"[22]
(Énfasis nuestro). Por lo tanto, ¿cómo es posible que se
extienda el término para procesar a los encubridores y
conspiradores **con el fin de que cooperen en el
esclarecimiento del delito de asesinato** y que el propio
delito de asesinato prescriba antes? Sería un
contrasentido afirmar que el Ministerio Público **tiene diez
(10) años** para encausar a los conspiradores y encubridores
con el fin de que "declaren en contra del actor principal
en la comisión de delitos", si a los cinco (5) años ya el
delito principal (asesinato) estuviera prescrito.[23]

Por otro lado, a pesar de que el Tribunal de
Apelaciones se amparó en la Ley Núm. 338-2004 (2004 Leyes
de Puerto Rico 2353) (**Ley Núm. 338**) y la Ley Núm. 221-

---

[22] En la exposición de motivos de la Ley Núm. 118-1996 se establece:

En la interminable lucha contra el crimen el ministerio
público utiliza los recursos disponibles a su alcance para
lograr las convicciones necesarias. **Uno de esos mecanismos es
lograr que los coautores y encubridores declaren contra los
autores principales o sujetos activos en la comisión de delitos
graves.**

[…]

[…] **La medida ayuda a combatir la criminalidad permitiendo al
estado mayor flexibilidad en completar las investigaciones
inconclusas al ampliar el término prescriptivo a diez (10) años,**
permitiendo a su vez al ministerio público procesar a los
conspiradores y encubridores por un tiempo mayor. **De esta
forma, los fiscales podrán tener a su disposición la alternativa
de utilizar a los propios conspiradores y encubridores en el
esclarecimiento de los casos.** (Énfasis nuestro) (1996 Leyes de
Puerto Rico 529-530).

[23] Es menester mencionar que posterior a la comisión de los hechos aquí
imputados el término prescriptivo para los delitos graves de segundo grado
severo fue aumentado a diez (10) años mediante la Ley Núm. 221-2010 (2010
Leyes de Puerto Rico 1348). Entendemos, no obstante, que igualmente sería un
contrasentido establecer que los delitos de encubrimiento y conspiración
cuando se cometan en relación al delito de asesinato en todas sus modalidades
tengan el mismo término prescriptivo que el propio delito de asesinato en
segundo grado.

2010 (2010 Leyes de Puerto Rico) (**Ley Núm. 221**), además del Art. 99 del Código Penal de 2004, para establecer que el asesinato en segundo grado prescribe a los cinco (5) años, ninguna de estas legislaciones se aprobó con este propósito. El objetivo perseguido por la Ley Núm. 338 fue añadir una nueva modalidad al delito grave de segundo grado y establecer los delitos a los cuales le sería aplicable. De ese modo, estos delitos en particular quedaron comprendidos en la modalidad de segundo grado severo. Posteriormente, por medio de la Ley Núm. 221, se estableció el término de diez (10) años para efecto de la prescripción pero, claro está, esto sólo en relación a aquellos delitos no excluidos en virtud del Art. 100.[24] De este modo, la Comisión de lo Jurídico Penal y la Comisión de Seguridad Pública y Asuntos de la Judicatura del Senado de Puerto Rico dejaron manifiestamente claro en el Informe Positivo sobre el P. de la C. 4, el cual dio paso a la Ley Num. 221, que:

> **Con la aprobación del P de la C.04, en nada se altera lo expresado en el Artículo 100 del Código Penal, en lo pertinente a los delitos que no prescriben**. Por tanto, aquellos delitos cuya clasificación sea delito grave de segundo grado severo, que están incluidos en el Artículo 100 del Código Penal, se regirán por el mismo. (Énfasis en el original). Véase Informe Positivo sobre el P. de la C. 4, presentado por la Comisión de lo Jurídico Penal y la Comisión

---

[24] Valga aclarar que además del asesinato en segundo grado existen otros delitos dentro de la modalidad de segundo grado severo que tampoco prescriben.

de Seguridad Pública y Asuntos de la Judicatura del Senado de Puerto Rico el 11 de noviembre de 2010, pág. 9.

En el Análisis Editorial del Art. 99 del Código Penal de 2004 realizado por la Dra. Dora Nevares Muñiz, ésta aclara que **la prescripción es "causa de extinción de la acción penal, excepto cuando se trate de un delito imprescriptible".** (Énfasis nuestro). D. Nevares-Muñiz, Código Penal de Puerto Rico, op. cit., pág. 135.

Al utilizar la Ley Núm. 338 y el Art. 99 del Código Penal de 2004 para resolver que el asesinato en segundo grado prescribe, el foro apelativo intermedio razonó que mediante la Ley Núm. 338 se convirtió dicho delito en uno de segundo grado severo y que, aunque posteriormente se estableció que los delitos de segundo grado severo prescriben a los diez (10) años (Ley Núm. 221), el término prescriptivo aplicable era el de cinco (5) años vigente al momento de los hechos (Art. 99). ¿Podría el recurrido argumentar lo mismo, por ejemplo, contra el secuestro de menores, el cual también fue clasificado como un delito de segundo grado severo mediante dicha legislación, pero de igual modo es imprescriptible según el Art. 100? Debe quedar claro que aunque la Ley Núm. 221 podía asignarle un término prescriptivo a este tipo de delitos, esto únicamente era viable para aquellos que no estuvieran previamente excluidos del Art. 99, en virtud del Art. 100.

Conforme a lo antes intimado, resolvemos que el foro recurrido erró en su análisis de la legislación aplicable. El primer paso es necesariamente evaluar si, conforme al Art. 100, el delito prescribe o no. Solamente si se determina que el delito en cuestión **no** es uno de los imprescriptibles, procede recurrir al Art. 99. Es decir, el análisis bajo el Art. 99 sólo se emplea para aquellos delitos que sí prescriben.

Finalmente, no podemos obviar en nuestro análisis que razones de orden público han llevado a nuestros legisladores a establecer la no prescripción de algunos delitos por constituir una afrenta a la sociedad. Es por ello que en cada Código Penal que ha regido en nuestra Isla desde el 1902 hasta el presente, se ha dispuesto que el delito de asesinato no prescribe. Valga mencionar que en reconocimiento de la gravedad del delito de asesinato en segundo grado en la Ley Núm. 338, antes mencionada, se le reclasificó como un delito grave de segundo grado severo[25] y se le fijó una pena mayor, **pues se estimó como uno de los "delitos cuya comisión evidencia un claro menosprecio por la vida, el bienestar y la seguridad de otros seres humanos".** (Énfasis nuestro). Exposición de Motivos de la Ley Núm. 338.

---

[25] También se ubicaron bajo esta modalidad las convicciones por los delitos de agresión sexual, secuestro agravado, secuestro de menores y robo agravado. Véase Ley Núm. 338-2004 (2004 Leyes de Puerto Rico 2355).

De la discusión que antecede se desprende que, en nuestra interpretación del Art. 100, tanto si recurrimos al significado del término asesinato, tal cual se encuentra plasmado en dicha disposición legal, como si lo analizamos en el contexto de otras legislaciones pertinentes, así como en el interés social que se procura proteger, llegamos a la conclusión de que el asesinato en segundo grado **no** prescribe.

IV

Por los fundamentos antes intimados, revocamos la Sentencia del Tribunal de Apelaciones de 20 de mayo de 2014 y resolvemos que, tanto bajo el Código Penal de 2004, así como bajo el Código Penal de 2012 vigente, el asesinato en segundo grado no prescribe.[26]

Se dictará Sentencia de conformidad.

ROBERTO FELIBERTI CINTRÓN
Juez Asociado

---

[26] El 11 de septiembre de 2014 el recurrido nos solicitó la desestimación del recurso de epígrafe por falta de jurisdicción. Alegó que el mismo es prematuro por haberse presentado antes de que el Tribunal de Apelaciones notificara su determinación en torno a una moción de reconsideración sometida por la peticionaria. No obstante, cabe aclarar que la aludida moción de reconsideración fue presentada tardíamente, por lo que no interrumpió el término para apelar. Puesto que la Sentencia del Tribunal de Apelaciones que estamos revisando fue dictada el 20 de mayo de 2014 y notificada al día siguiente, y la peticionaria presentó el recurso de epígrafe ante nos el 20 de junio de 2014, el mismo fue sometido dentro del término reglamentario. A base de lo anterior, declaramos *No Ha Lugar* la moción de desestimación sometida por el recurrido.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


El Pueblo de Puerto Rico

    Peticionario

        v.             CC-2014-475     *Certiorari*

Joshua Anthony Roche

    Recurrido


SENTENCIA


En San Juan, Puerto Rico, a 15 de junio de 2016.

    Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, revocamos la Sentencia del Tribunal de Apelaciones de 20 de mayo de 2014. Resolvemos que, tanto bajo el Código Penal de 2004, así como bajo el Código Penal de 2012 vigente, el asesinato en segundo grado no prescribe. Se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.

    Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez y la Juez Asociada señora Rodríguez Rodríguez concurren sin opinión escrita. El Juez Asociado señor Estrella Martínez emitió una Opinión Concurrente.


                    Juan Ernesto Dávila Rivera
                 Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Joshua Anthony Roche<br><br>Recurrido | CC-2014-475 | Certiorari |

Opinión concurrente emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 15 de junio de 2016.

> [D]ebemos establecer que el término prescriptivo propuesto, **solo aplicaría a los delitos de asesinato en segundo grado**, robo agravado y agresión sexual, ya que los delitos de secuestro y secuestro de menores no tienen término prescriptivo según el Artículo 100 del Código Penal.[27]

El caso de epígrafe nos enfrentaba a una controversia jurídica sencilla: esto es, debíamos resolver si el asesinato en segundo grado –según tipificado en el Art. 106 del derogado Código Penal de 2004, *infra*- está incluido dentro de la enumeración taxativa de los delitos que no

---

[27]*Véase* <u>Ponencia de la Policía de Puerto Rico</u>, con relación al P. de la C. 4, 26 de mayo de 2009, pág. 3. (Énfasis suplido).

prescriben o si, por el contrario, el legislador entendió prudente imponer un término prescriptivo específico para incoar la acción penal por el delito en cuestión.

Ante ello, una Mayoría de este Tribunal, en total abstracción de la legislación *vigente* al momento de los trámites procesales de este caso, concluyó que bajo el Código Penal de 2004 el asesinato en segundo grado no prescribe. Esto, a pesar de que existe legislación que claramente fija un determinado término prescriptivo para ese tipo de delito.

Por sostener que el legislador ejerció su prerrogativa y determinó que la acción penal por el delito de asesinato en segundo grado –bajo el Código Penal de 2004– no es imprescriptible, concurro con el resultado al que hoy llega una Mayoría de este Tribunal. Veamos.

**I**

Por motivo de unos alegados hechos acaecidos el 1 de abril de 2007, el Ministerio Público presentó denuncias contra el Sr. Joshua Anthony Roche (señor Roche) por el delito de asesinato en primer grado, según tipificado en el Art. 106 del Código Penal de 2004, 33 LPRA ant. sec. 4734, y cargos por violación al Art. 5.04 de la Ley de Armas de Puerto Rico (Ley de Armas), 25 LPRA sec. 458c. Transcurridos aproximadamente 6 años y medio después de los alegados hechos, el 11 de octubre

de 2013, se presentaron las denuncias y, a su vez, se determinó causa para arresto.

Celebrada la correspondiente vista preliminar, el Tribunal de Primera Instancia determinó no causa para acusar por el delito de asesinato en primer grado. No obstante, encontró causa por asesinato en segundo grado, según tipificado en el Art. 106 del Código Penal de 2004, 33 LPRA ant. sec. 4734, y por los referidos cargos de la Ley de Armas. Luego de varios incidentes procesales, el 27 de febrero de 2014, el Ministerio Público presentó las respectivas acusaciones contra el señor Roche.

Entretanto, el 12 de marzo de 2014, el señor Roche presentó una *Moción de Desestimación*. En esencia, adujo que el término prescriptivo para encausarlo por los delitos atribuidos era de 5 años, en conformidad con el Art. 99 del Código Penal de 2004, 33 LPRA ant. sec. 4727. A tales efectos, planteó que como habían transcurrido más de 5 años desde que ocurrieron los alegados hechos hasta la determinación de causa para arresto, la acción penal estaba prescrita. En consecuencia, solicitó la desestimación de los cargos imputados.

Ponderados los argumentos de las partes, el 26 de marzo de 2014, el Tribunal de Primera Instancia emitió una Minuta-Resolución mediante la cual desestimó los cargos por infracción a la Ley de Armas. Empero, denegó la solicitud de desestimación del cargo de asesinato en

segundo grado. Ello, tras razonar que conforme al Art. 100 del Código Penal de 2004, 33 LPRA ant. sec. 4728, el delito de asesinato no prescribía.

Inconforme, el señor Roche acudió ante el Tribunal de Apelaciones. En lo pertinente, arguyó que el foro primario incidió al determinar que el asesinato en segundo grado no prescribe. Adujo que el Art. 100 del Código Penal de 2004, 33 LPRA ant. sec. 4728, el cual enumera los delitos imprescriptibles, adolece de vaguedad, ya que no indica a qué tipo de asesinato se refiere. Amparándose en ello, sostuvo que el término para presentar la acción penal por asesinato en segundo grado era el de 5 años establecido en el Art. 99 del Código Penal de 2004, 33 LPRA ant. sec. 4727, el cual aplica a los delitos graves de segundo a cuarto grado.

Examinado el caso, el 20 de mayo de 2014, el Tribunal de Apelaciones emitió una Sentencia mediante la cual revocó el dictamen recurrido y decretó la desestimación por prescripción del cargo de asesinato en segundo grado. En esencia, razonó que al momento de los hechos el término prescriptivo aplicable al asesinato en segundo grado era el de 5 años dispuesto en el Art. 99 del Código Penal de 2004, 33 LPRA ant. sec. 4727, para los delitos graves de segundo a cuarto grado. Así las cosas, concluyó que al determinarse causa para arresto el 11 de octubre de 2013, transcurrió en exceso el plazo establecido para la presentación de la acción penal por el delito de asesinato en segundo grado, por lo que

estaba prescrita. En desacuerdo, la Oficina de la Procuradora General solicitó reconsideración, pero fue denegada.

En disconformidad, la Oficina de la Procuradora General recurrió ante este Tribunal mediante recurso de *certiorari*. En éste, señala que el Tribunal de Apelaciones erró al determinar que el asesinato en segundo grado -bajo el Código Penal de 2004- prescribe a los 5 años. En su comparecencia, la Oficina de la Procuradora General expresa que en el Art. 100 del Código Penal de 2004, 33 LPRA ant. sec. 4728, aparece el asesinato como uno de los delitos que no prescriben. En cuanto a ello, aduce que ese artículo se refiere a la definición general de asesinato incluida en el Art. 105 del Código Penal de 2004, 33 LPRA ant. sec. 4733.[28] En ese sentido, arguye que el Art. 100 -el cual enumera los delitos que no prescriben- es aplicable a ambas modalidades de asesinato: primer grado y segundo grado. Ello, pues plantea que el asesinato es un solo delito, pero dividido en grados, conforme al Art. 106 del Código Penal de 2004, 33 LPRA ant. sec. 4734.

En atención a lo anterior, el 12 de diciembre de 2014, este Tribunal emitió una Resolución mediante la cual expidió el auto de *certiorari* presentado. Oportunamente, el señor Roche compareció mediante

---

[28]Según surge del Art. 105 del Código Penal de 2004, "[a]sesinato es dar muerte a un ser humano con la intención de causársela". 33 LPRA ant. sec. 4733.

*Alegato del Recurrido*. Esencialmente, reproduce los argumentos esgrimidos ante los foros recurridos al exponer que como el asesinato en segundo grado es un delito en segundo grado, le aplica el periodo prescriptivo de 5 años en virtud del Art. 99 del Código Penal de 2004, 33 LPRA ant. sec. 4727.

Evaluados los argumentos de las partes, una Mayoría de este Tribunal acogió la postura expresada por la Oficina de la Procuradora General y determinó que tanto el Art. 100 del Código Penal de 2004, 33 LPRA ant. sec. 4728, como la interpretación de la intención legislativa, llevaban a la conclusión de que el asesinato en segundo grado no prescribe. Ello, no obstante, pasando por alto el análisis de dos estatutos cruciales para disponer acertadamente de la controversia de autos, a saber: la Ley Núm. 338-2004 y la Ley Núm. 221-2010.

Como considero que en este caso procedía aplicar lo claramente establecido en las aludidas leyes, con la inexorable determinación de que bajo el Código Penal de 2004 el asesinato en segundo grado no es un delito imprescriptible, pero tampoco prescribe a los 5 años, como resolvió el Tribunal de Apelaciones, concurro con el dictamen de una Mayoría de este Tribunal.

**II**

Como es sabido, tras un paulatino proceso de reforma penal, el 18 de junio de 2004, se aprobó la Ley

Núm. 149, conocida como *Código Penal de 2004*.[29] En lo pertinente, este cuerpo normativo tipifica el delito mediante una expresión de la conducta prohibida y le asigna una clasificación de gravedad para fines de la pena. *Véase* D. Nevares-Muñiz, *Las penas en el nuevo Código Penal: a cinco años de su vigencia*, 79 Rev. Jur. UPR 1129 (2010). De esta forma, se reconocen distintos grados de severidad de delitos, los cuales establecen intervalos uniformes de discreción judicial en cuanto a la proporcionalidad de las penas de reclusión. Íd. Así, el Art. 16 del Código Penal de 2004 atiende la clasificación de cada delito en tipos y los distintos términos de las penas.[30] 33 LPRA ant. sec. 4644.

**A.**

Adviértase que la clasificación de delito grave de segundo grado contiene una subclasificación denominada *delitos graves de segundo grado severo*, limitada a ciertos delitos allí especificados. Esta subclasificación se introdujo mediante enmienda legislativa antes de entrar en vigor el Código Penal de

---

[29]El Código Penal de 2004 entró en vigor el 1 de mayo de 2005. Posteriormente, fue derogado en virtud de la Ley Núm. 146-2012, conocida como *Código Penal de 2012*.

[30]En conformidad con el Art. 16 del Código Penal de 2004, la pena de reclusión para el delito grave de primer grado es de 99 años. La pena de reclusión para el delito grave de segundo grado fluctúa entre 8 años y 1 día y 15 años. Por su parte, la pena de reclusión para el delito grave de tercer grado fluctúa entre 3 años y 1 día y 8 años, y la del delito grave de cuarto grado entre 6 meses y 1 día y 3 años. 33 LPRA ant. sec. 4644.

2004. Específicamente, la Ley Núm. 338-2004 (Ley Núm. 338) fue promulgada con el propósito de enmendar, entre otras cosas, el citado Art. 16 del Código Penal de 2004, y crear la aludida clasificación adicional para ciertos delitos cuya comisión evidencia un claro menosprecio por la vida, el bienestar y la seguridad de otros seres humanos. (2004 (Parte II) Leyes de Puerto Rico 2354). A tales efectos, el legislador modificó la clasificación de delito grave de segundo grado e instituyó una modalidad simple y otra severa. (2004 (Parte II) Leyes de Puerto Rico 2354). Dentro de la nueva clasificación de delito grave de segundo grado severo, el legislador incluyó expresamente los siguientes delitos: **asesinato en segundo grado**, agresión sexual, secuestro agravado, secuestro de menores y robo agravado. (2004 (Parte II) Leyes de Puerto Rico 2354); *véase*, además, 33 LPRA ant. sec. 4644.

Evidentemente, la nueva clasificación tuvo repercusiones en lo que atañe a las penas de reclusión. (2004 (Parte II) Leyes de Puerto Rico 2354). Esto, pues la enmienda efectuada al precitado Art. 16 también incluyó determinar que los delitos de segundo grado severo conllevan una pena de reclusión -mayor que los de la modalidad simple- que fluctúa entre los 15 años y 1 día y 25 años. 33 LPRA ant. sec. 4644; *véase*, además, 33 LPRA ant. sec. 4694. Consecuentemente, se enmendó el Art. 107 del Código Penal de 2004 a los fines de disponer que "[a] la persona convicta de **asesinato en**

**segundo grado** se le impondrá la pena provista para el delito grave de segundo grado severo".[31] 33 LPRA ant. sec. 4735. (Énfasis suplido).

### B.

De marcada relevancia a la controversia ante nos es el hecho de que durante la vigencia del Código Penal de 2004, la Asamblea Legislativa aprobó la Ley Núm. 221-2010 (Ley Núm. 221). Ello respondió a la necesidad de enmendar el Art. 99 del Código Penal de 2004, 33 LPRA ant. sec. 4727, con el fin de fijar un término prescriptivo específico para la nueva clasificación de delitos creada en virtud de la Ley Núm. 338.

En la *Exposición de Motivos* de la Ley Núm. 221 se hizo constar que aunque el legislador entendió prudente crear en el 2004 una nueva clasificación para delitos graves que conllevan violencia contra la persona, omitió asignarle su propio plazo prescriptivo. (2010 (Parte II) Leyes de Puerto Rico 1350). Es decir, guardó silencio en torno al plazo prescriptivo para entablar la acción penal por los delitos enumerados bajo la clasificación de delitos graves de segundo grado severo. Así

---

[31] Es oportuno indicar que se mantuvo inalterada la primera parte del Art. 107 del Código Penal de 2004, 33 LPRA ant. sec. 4735, de la cual surge que a la persona convicta de asesinato en primer grado se le impondrá la pena provista para el delito grave de primer grado; es decir, 99 años. Con relación a esto, la profesora Nevares-Muñiz explica que la pena de 99 años para el asesinato en primer grado se seleccionó por ser la pena que históricamente se ha fijado para la conducta más grave. D. Nevares-Muñiz, Código Penal de Puerto Rico, 5ta ed., San Juan, Instituto para el Desarrollo del Derecho, Inc., 2012, pág. 153.

las cosas, resultaba imperativo aclarar el vacío o falta de especificidad al momento de crear la nueva clasificación.

En consecuencia, en el 2010, la Asamblea Legislativa determinó que los delitos graves de segundo grado severo, por ser más serios, requerían un periodo prescriptivo mayor que el de 5 años dispuesto para los delitos graves de segundo a cuarto grado. (2010 (Parte II) Leyes de Puerto Rico 1350). Expresamente, el legislador decretó que ese plazo de 5 años no debía incluir a los delitos graves de segundo grado severo. (2010 (Parte II) Leyes de Puerto Rico 1350). Por consiguiente, al amparo de la Ley Núm. 221, se enmendó el Art. 99 del Código Penal de 2004, 33 LPRA ant. sec. 4727 para dejar claro que en los delitos graves de segundo grado severo la acción penal prescribe a los **10 años**. (2011 (Parte 1) Leyes de Puerto Rico 373, 376); *véase*, además, 33 LPRA ant. sec. 4727(a).

## III

Vinculado a lo anterior, y por tratarse de una cuestión medular de este caso, resulta necesario adentrarse a examinar la figura de la prescripción en el ámbito penal. Procedo.

Como sabemos, es norma reiterada que la prescripción es una de las causas que extingue la acción penal. *Véanse* L. Jiménez de Asúa, <u>Tratado de Derecho Penal</u>, T. II, 2da ed., Buenos Aires, Ed. Losada, 1950, pág. 642; S. Mir Puig, <u>Derecho Penal: Parte General</u>, 8va ed.,

Barcelona, Ed. Reppertor, 2008, pág. 759; D. Nevares-Muñiz, _Sumario de Derecho Procesal Penal Puertorriqueño_, 10ma ed., San Juan, Instituto para el Desarrollo del Derecho, Inc., 2014, pág. 136. En repetidas ocasiones, este Tribunal ha indicado que en el ámbito penal la prescripción consiste en la extinción de la responsabilidad penal mediante el transcurso de un período de tiempo, sin que el delito sea perseguido o sin ser la pena ejecutada. _Pueblo v. Pérez Pou_, 175 DPR 218, 238 (2009); _Pueblo v. Martínez Rivera_, 144 DPR 631, 640 (1997); _Pueblo v. Oliver Frías_, 118 DPR 285, 290 (1987); _véanse_, además, E. Cuello Calón, _Derecho Penal_, 18va ed., Barcelona, Ed. Bosch, 1981, T. I, V. II, pág. 758; P. Malavet Vega, _Manual de Derecho Penal Puertorriqueño_, Mayagüez, Ediciones Barco de Papel, 1997, pág. 414. Estudiosos sobre el tema han afirmado que la prescripción implica la cesación de la potestad punitiva del Estado, por razón de que el tiempo anula el interés represivo y dificulta la adquisición de pruebas respecto a la realización del evento delictivo. S. Vela Treviño, _La prescripción en materia penal_, México, Editorial Trillas, 1983, pág. 73; _véase_, además, _Pueblo v. Pérez Pou_, _supra_, págs. 239-240. En particular, la profesora Nevares-Muñiz define la prescripción en el campo penal como el término de tiempo que tiene el Estado para comenzar la acción penal, pasado el cual estará impedido de iniciarla. D. Nevares-Muñiz, _Derecho Penal Puertorriqueño: Parte General_, San Juan, Instituto

para el Desarrollo del Derecho, Inc., 2015, pág. 410; *véanse*, además, Pueblo v. Martínez Rivera, *supra*, pág. 640; Pueblo v. Oliver Frías, *supra*, pág. 290.

A la luz de lo anterior, este Tribunal ha resuelto que el término prescriptivo es un plazo que el Estado se autoimpone fuera del cual no puede perseguir determinados delitos o procesar al imputado de su comisión. Pueblo v. Martínez Rivera, *supra*, pág. 642; Pueblo v. Oliver Frías, *supra*, pág. 290. Es decir, en virtud de los plazos prescriptivos, el Estado limita su facultad punitiva para no extenderse más allá de un determinado período de tiempo. Pueblo v. Pérez Pou, *supra*, pág. 239; Pueblo v. Martínez Rivera, *supra*, págs. 645-646; *véase*, además, O.E. Resumil, Práctica jurídica de Puerto Rico: Derecho Procesal Penal, Orford, Ed. Butterworth, 1993, Vol. II, págs. 220-221. En palabras del tratadista Jiménez de Asúa, "el Derecho Penal subjetivo no es ilimitado, pues el Estado, en el ejercicio del poder de castigar, tiene que limitarse a sí mismo, fijando el supuesto y el contenido de su actuación". L. Jiménez de Asúa, Tratado de Derecho Penal, 2da ed., Buenos Aires, Ed. Losada, 1956, T. I, pág. 69. Por tanto, la ley es clara y la jurisprudencia interpretativa también, a los efectos de reconocer que los términos prescriptivos persiguen delimitar el tiempo durante el cual una persona puede estar expuesta a ser procesada por la comisión de determinados delitos. Pueblo v. Martínez Rivera, *supra*, pág. 642.

Del mismo modo, en varias ocasiones este Tribunal ha enfatizado que el propósito de la prescripción es informarle al imputado con suficiente anticipación la intención que tiene el Estado de procesarlo criminalmente e informarle la naturaleza del delito que se le imputa, de forma que no se menoscabe su oportunidad de defenderse por razón de que la evidencia disponible para establecer su defensa desaparezca o se afecte con el transcurso del tiempo. Pueblo v. Pérez Pou, *supra*, pág. 238; Pueblo v. Martínez Rivera, *supra*, págs. 639-649; Pueblo v. Vallone, Jr., 133 DPR 427, 432 (1993); Pueblo v. Guadiola Dávila, 130 DPR 585 (1992); Pueblo v. Oliver Frías, *supra*, pág. 291; Pueblo v. Tribunal Superior, 84 DPR 24, 27-28 (1961). De este modo, se promueve que el procesamiento del imputado de delito se base en pruebas frescas y fehacientes. Pueblo v. Oliver Frías, *supra*, pág. 291; *véase*, además, Mir Puig, op. cit., pág. 759.

Es por ello que este Tribunal ha hecho hincapié en que si bien los plazos prescriptivos responden a disposiciones estatutarias, los preceptos fundamentales de la prescripción son de rango superior. Pueblo v. Pérez Pou, *supra*, pág. 237; Pueblo v. Martínez Rivera, *supra*, pág. 641; Pueblo v. Vallone, Jr., *supra*, pág. 431. Esto, pues la prescripción es un instituto del derecho penal sustantivo, inexorablemente atado al derecho a un debido proceso de ley y a un juicio justo e

imparcial. Pueblo v. Pérez Pou, *supra*, pág. 237; *véase*, además, Malavet Vega, op. cit., pág. 414.

**A.**

Particularmente, la normativa en cuanto a la prescripción bajo el Código Penal de 2004 se encuentra regulada en los Arts. 97-102. *Véanse* 33 LPRA ants. secs. 4727-4730. Mediante estos preceptos, no solo se establecen los términos prescriptivos para los determinados delitos, sino que se especifica la manera en que éstos deben computarse. Así, el Art. 101 del Código Penal de 2004 indica que el plazo prescriptivo de la acción penal se computará desde el día de la comisión del delito[32] hasta la fecha en que se determine causa probable para arresto o citación. 33 LPRA ant. sec. 4729.

En lo pertinente al caso que nos ocupa, el Art. 99 del Código Penal del 2004 dispone que prescribirán al año los delitos menos graves, excepto los provenientes de infracciones a leyes fiscales y todo delito menos grave cometido por funcionarios o empleados públicos en el desempeño de sus funciones, que prescribirán a los 5 años. También, establece que la acción penal prescribirá a los 5 años en los delitos graves de segundo grado a

---

[32]En lo que respecta al "día de la comisión del delito", surge del Art. 21 del Código Penal de 2004 que el delito se considera cometido cuando se ejecuta la acción o cuando debía ejecutarse la acción omitida. Además, se considera cometido el delito en el momento en que se ha producido el resultado delictivo. 33 LPRA ant. sec. 4649.

cuarto. 33 LPRA ant. sec. 4727. Del mismo modo, preceptúa que los delitos de encubrimiento y conspiración prescribirán a los 10 años cuando se cometan con relación a los delitos de asesinato en todas sus modalidades. Adviértase que, como expuse, la Ley Núm. 221 enmendó el Art. 99 del Código Penal de 2004 a los efectos de establecer que los delitos graves de segundo grado severo, entre los cuales se encuentra el asesinato en segundo grado, tienen un término prescriptivo de **10 años**. 33 LPRA ant. sec. 4727.

En fin, en lo atinente al asunto de la prescripción, es pertinente señalar que por razones de interés público históricamente el Estado ha dispuesto que algunos delitos no habrán de prescribir. Como corolario, en el Art. 100 del Código Penal de 2004 se enumeran los delitos que no están sujetos a plazos prescriptivos, entre los cuales se encuentran los siguientes: los graves de primer grado, genocidio, crimen de lesa humanidad, asesinato, secuestro y secuestro de menores, entre otros. 33 LPRA ant. sec. 4728. En cuanto a ello, debe recalcarse que el hecho de que existan delitos que no prescriban, no significa que el Estado se cruce de brazos y no someta los cargos, estando en posición de hacerlo. O.E. Resumil, *Derecho Procesal Penal: limitaciones constitucionales al ejercicio de Ius Puniendi*, 71 Rev. Jur. UPR 547, 552 (2002).

**IV**

Por último, y con el fin de resolver acertadamente la controversia ante este Tribunal, deben evaluarse las disposiciones pertinentes al ejercicio de interpretación de las leyes. Veamos.

Es doctrina conocida que la aplicación de una ley a los hechos de un caso supone un ejercicio de interpretación. Ese ejercicio debe ajustarse a unos principios que orienten al juez o la jueza en su proceso de entender el estatuto, en aras de aplicarlo conforme al debido proceso de ley y al principio de legalidad en todas sus manifestaciones. D. Nevares-Muñiz, Derecho Penal Puertorriqueño: Parte General, San Juan, Instituto para el Desarrollo del Derecho, Inc., 2015, pág. 111. En cuanto a ello, este Tribunal ha manifestado que en el quehacer de resolver las controversias ante su consideración y adjudicar los derechos de las partes, los foros judiciales deben interpretar los estatutos aplicables a la situación de hechos que tienen ante sí, de forma tal que, de ordinario, se cumpla con la intención legislativa. Pueblo v. Zayas Rodríguez, 147 DPR 530, 537 (1999); véase, además, R.E. Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, 2da ed. rev., Publicaciones JTS, 1987, Vol. 1, pág. 241. Ello, pues el legislador, en su función de promulgar leyes,

> [t]rata de corregir un mal, **alterar una situación existente**, completar una

> reglamentación vigente, fomentar algún bien específico o el bienestar general, reconocer o proteger un derecho, crear una política pública o formular un plan de gobierno. Bernier y Cuevas Segarra, op. cit. págs. 245-246. (Énfasis suplido).

Repetidamente, este Tribunal ha expresado que las leyes deben interpretarse y aplicarse en armonía con el propósito social que las inspira, sin desvincularlas de la realidad y del problema humano que persiguen resolver. Pueblo v. Zayas Rodríguez, supra, pág. 537; Col. Ing. Agrim. PR v. AAA, 131 DPR 735, 756 (1992); Pueblo v. Pizarro Solís, 129 DPR 911, 918 (1992). Del mismo modo, en el ejercicio de interpretar las leyes, los tribunales deben considerar la realidad social de donde surgen y operan. Boys and Girls Club v. Srio. de Hacienda, 179 DPR 746, 756 (2010); Pueblo v. Figueroa Pomales, 172 DPR 403, 417 (2007); Pueblo v. Sierra Rodríguez, 137 DPR 903 (1995); Pueblo v. Arandes de Celis, 120 DPR 530, 538 (1988); Pacheco v. Vargas, Alcaide, 120 DPR 404, 410 (1988). Ello significa que la ley no debe ser interpretada aisladamente; de esta manera, se evitan resultados absurdos. Boys and Girls Club v. Srio. de Hacienda, supra, pág. 756; Pacheco v. Vargas Alcaide, supra, pág. 409.

En innumerables ocasiones este Tribunal ha indicado que constituye un "principio cardinal de hermenéutica que al lenguaje de una ley debe dársele la interpretación que valida el propósito que tuvo el legislador al aprobarla". Pueblo v. Figueroa Pomales,

*supra*, pág. 418; Pueblo v. Martínez Rivera, *supra*, pág. 647;

Pacheco v. Vargas, Alcaide, *supra*, pág. 409. Como regla

general, la hermenéutica jurídica consiste en auscultar,

averiguar, precisar, determinar, cuál ha sido la voluntad

legislativa. Pepsi-Cola v. Mun. Cidra, 186 DPR 713, 736-737

(2012); IFCO Recycling v. Aut. Desp. Sólidos, 184 DPR 712, 738

(2012); Pueblo v. Zayas Rodríguez, *supra*, pág. 537; *véase*,

además, Bernier y Cuevas Segarra, *op. cit.*, pág. 241. De esta

forma, los tribunales deben interpretar la ley en

consideración de los fines que persigue y la política pública

que la inspira.

Particularmente, cuando se ha requerido el despliegue de

nuestra facultad interpretativa, hemos reafirmado que los

estatutos penales deben ser interpretados restrictivamente en

cuanto a lo que desfavorecen al acusado y liberalmente en

cuanto a lo que le favorezcan.[33] Pueblo v. Figueroa Pomales, *supra*,

---

[33]El Art. 13 del Código Penal de 2004 expone, a grandes rasgos, la regla de interpretación que se utiliza con relación a los estatutos penales. Específicamente, dispone que:

> Las palabras y frases se interpretarán según el contexto y el significado sancionado por el uso común y corriente.

> Las voces usadas en este Código en el tiempo presente incluyen también el futuro; las usadas en el género masculino incluyen el femenino y el neutro, salvo los casos en que tal interpretación resulte absurda; el número singular incluye el plural y el plural incluye el singular.

pág. 417; Pueblo v. Martínez Rivera, *supra*, pág. 647; Pueblo v. Sierra Rodríguez, *supra*, pág. 908; Pueblo v. Arandes de Celis, *supra*, pág. 538; Pacheco v. Vargas Alcaide, *supra*, págs. 409-410.

Al amparo de los preceptos jurídicos enunciados, procedo a examinar la controversia que presenta este caso.

**V**

Conforme expuse, los hechos de este caso tuvieron lugar el 1 de abril de 2007. Aproximadamente 6 años y medio después, se determinó causa para arresto contra el señor Roche por el delito de asesinato en primer grado y cargos por infracción a la Ley de Armas. Celebrada la vista preliminar, el Tribunal de Primera Instancia determinó causa para acusar por el delito de asesinato en segundo grado, según tipificado en el Art. 106 del Código Penal de 2004, y por la violación a la Ley de Armas. Tras varios trámites procesales, se presentaron las respectivas acusaciones contra el señor Roche.

En el ínterin, el señor Roche presentó una moción para desestimar bajo el fundamento de que los delitos imputados habían prescrito. Ante ello, el foro primario determinó prescritos los cargos por transgresión a

_____

Si el lenguaje empleado es susceptible de dos o más interpretaciones, debe ser interpretado para adelantar los propósitos de este Código y del artículo particular objeto de interpretación. 33 LPRA ant. sec. 4641.

la Ley de Armas. No obstante, concluyó que el asesinato era imprescriptible.

Inconforme, el señor Roche recurrió ante el Tribunal de Apelaciones. Examinado el caso, el foro apelativo intermedio revocó el dictamen recurrido y decretó la desestimación por prescripción del cargo de asesinato en segundo grado. Razonó que al momento de los hechos el plazo prescriptivo aplicable al asesinato en segundo grado era el de 5 años establecido en el Art. 99 del Código Penal de 2004, para los delitos graves de segundo a cuarto grado.

En desacuerdo, la Oficina de la Procuradora General acudió ante este Tribunal. En esencia, alegó que el Art. 100 del Código Penal de 2004 —que especifica los delitos que no prescriben— aplica a ambas modalidades de asesinato: primer grado y segundo grado. Por tanto, para la Oficina de la Procuradora General, el asesinato en segundo grado es imprescriptible. Por su parte, el señor Roche argumentó que como el asesinato en segundo grado es un delito en segundo grado, le aplica el término prescriptivo de 5 años dispuesto en el Art. 99 del Código Penal de 2004. Por consiguiente, arguyó que la acción penal está prescrita.

Como se puede deducir, la controversia medular en este caso consistía en resolver si el asesinato en segundo grado —bajo el Código Penal de 2004— es imprescriptible o si, *a contrario sensu*, el legislador impuso un plazo prescriptivo para entablar la acción

penal por ese delito. Visto el caso, una Mayoría de este Tribunal acogió el argumento esgrimido por la Oficina de la Procuradora General y resolvió, sin más, que el asesinato en segundo grado no prescribe. Así las cosas, se revoca la Sentencia emitida por el Tribunal de Apelaciones que determinó que bajo el Código Penal de 2004 el asesinato en segundo grado prescribe a los 5 años. Concurro con el curso de acción seguido por una Mayoría de este Tribunal. Me explico.

**A.**

Conforme señalé, el asesinato en segundo grado bajo el Código Penal de 2004 se incluyó en la modalidad de *delito grave de segundo grado severo* creada en virtud de la Ley Núm. 338. Ante la evidente realidad de que el asesinato en segundo grado no se encontraba bajo las particularidades de la clasificación de delitos graves de segundo grado simple, no le aplicaba el término prescriptivo de 5 años dispuesto para los delitos de ese tipo. Por tanto, el referido delito no tenía un plazo prescriptivo fijo para incoar la acción penal.

Ahora bien, en el 2010, la Asamblea Legislativa decidió establecer un término prescriptivo específico para los delitos incluidos en la clasificación de delitos graves de segundo grado severo. A tales efectos, y en virtud de la Ley Núm. 221, se impuso un plazo prescriptivo de **10 años** para presentar la acción penal para los delitos enumerados en esa clasificación. Nada dispuso el legislador en la Ley Núm. 221 en cuanto a que

al asesinato en segundo grado no le aplicaba ese término prescriptivo.[34] Tampoco se desprende que esa fuera la intención legislativa al aprobar el estatuto.[35] Inclusive, queda claro que la aprobación de la Ley Núm. 221 respondió al deseo del legislador de superar la incertidumbre con respecto a la prescripción de la acción penal en los delitos graves de segundo grado

[34]Ello, a diferencia del secuestro de menores, por ejemplo, que a pesar de que fue clasificado como un delito grave de segundo grado severo mediante la Ley Núm. 338, **expresamente** el legislador lo mantuvo en el Art. 100 como uno de los delitos que no prescriben. 33 LPRA ant. sec. 4728.

[35]En el *Informe Positivo sobre el P. de la C. 4*, la Comisión de lo Jurídico Penal y la Comisión de Seguridad Pública y Asuntos de la Judicatura del Senado de Puerto Rico, haciendo alusión a los delitos de secuestro y secuestro de menores, expresaron que con la aprobación del P. de la C. 4 en nada se alteraba lo dispuesto en el Art. 100 del Código Penal, 33 LPRA ant. sec. 4728, en cuanto a los delitos que no prescriben. Por tanto, para las referidas comisiones aquellos delitos cuya clasificación sea delito grave de segundo grado severo, que están **incluidos** en el Art. 100, se regirán por el mismo. *Véase* Informe Positivo sobre el P. de la C. 4, presentado por la Comisión de lo Jurídico Penal y la Comisión de Seguridad Pública y Asuntos de la Judicatura del Senado de Puerto Rico, 11 de noviembre de 2010, pág. 9. Como vimos, principios elementales de Derecho Penal y la hermenéutica jurídica nos obligan a reconocer que el asesinato en segundo grado **no está expresamente incluido** dentro de la enumeración taxativa de los delitos imprescriptibles que surge del precitado Art. 100.

Cónsono con lo anterior, cabe señalar que de la ponencia presentada por la Policía de Puerto Rico con relación al P. de la C. 4, surge la siguiente aclaración: "debemos establecer que el término prescriptivo propuesto, **solo aplicaría a los delitos de asesinato en segundo grado**, robo agravado y agresión sexual, ya que los delitos de secuestro y secuestro de menores no tienen término prescriptivo según el Artículo 100 del Código Penal". *Véase* Ponencia de la Policía de Puerto Rico, con relación al P. de la C. 4, 26 de mayo de 2009, pág. 3. (Énfasis suplido).

severo. En vista de ello, considero que no podemos ignorar lo dispuesto claramente en la Ley Núm. 221.

Tal y como lo hizo con el secuestro de menores, si la intención del legislador hubiese sido incluir al **asesinato en segundo grado** como un delito imprescriptible, así lo hubiera hecho expresamente. No obstante, lo incluyó bajo la clasificación de delito grave de segundo grado severo, con la consecuencia de tener un término prescriptivo específico de 10 años en virtud de la Ley Núm. 221. Por ello, no puedo coincidir con la postura de una Mayoría de este Tribunal.

Con lo anterior en mente, procedo a aplicar los preceptos enunciados a los hechos de este caso.

**B.**

Surge de los autos que los alegados hechos que motivaron la presentación de las denuncias contra el señor Roche ocurrieron el **1 de abril de 2007.** Evidentemente, lo dispuesto en la Ley Núm. 221 le aplica al señor Roche, por lo que el Ministerio Público contaba con 10 años -a partir de la comisión del delito- para entablar la acción penal por asesinato en segundo grado en su contra.[36]

---

[36]Aunque al momento de los alegados hechos el asesinato en segundo grado no contaba con un límite de prescripción para presentar la acción penal, lo dispuesto posteriormente en la Ley Núm. 221 le aplica al señor Roche en virtud del principio de favorabilidad. En cuanto a ello, recuérdese que conforme a este principio procede la aplicación retroactiva de una ley penal cuando favorece a la persona imputada de delito. *Véanse*

Como vimos, la determinación de causa para arresto tuvo lugar el **11 de octubre de 2013,** 6 años y medio después de la comisión de los alegados hechos. Esa determinación tuvo el efecto de interrumpir la prescripción para el delito de asesinato en segundo grado. Ello significa que no transcurrió en exceso el término prescriptivo de 10 años dispuesto en la Ley Núm. 221. En consecuencia, sostengo que **no procede la desestimación de la acción penal contra el peticionario por razón de prescripción.** Incidió el Tribunal de Apelaciones al

_____

Pueblo v. Torres Cruz, res. el 4 de noviembre de 2015, 2015 TPSR 147, 194 DPR ___ (2015); Pueblo v. Hernández García, 186 DPR 656, 673 (2012). En armonía con lo anterior, el Art. 4 del Código Penal de 2004 establece que:

> La ley penal tiene efecto retroactivo en lo que favorezca a la persona imputada de delito. En consecuencia, se aplican las siguientes normas:
>
> (a) **Si la ley vigente al tiempo de cometerse el delito es distinta de la que exista al procesar al imputado o al imponerle la sentencia, se aplicará siempre la ley más benigna.**
>
> (b) Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley más benigna en cuanto a la pena o a la medida de seguridad o al modo de ejecutarlas, se aplicará retroactivamente.
>
> (c) Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley que suprime el delito, o el Tribunal Supremo emite una decisión que despenalice el hecho, la pena quedará extinguida y la persona liberada, de estar recluida o en restricción de libertad.
>
> En estos casos los efectos de la nueva ley o de la decisión judicial operarán de pleno derecho. 33 LPRA ant. sec. 4637. (Énfasis suplido).

así determinarlo. A su vez, erró el foro primario al limitarse a reconocer que el asesinato en segundo grado bajo el Código Penal de 2004 no prescribe, pero no aplicar la legislación subsiguiente aquí reconocida.

En fin, resalta el hecho de que una Mayoría de este Tribunal descartó el análisis de la Ley Núm. 338 y la Ley Núm. 221, y, de esa forma, se alejó de la clara intención del legislador al aprobar esos dos estatutos. Así, creó una norma inaplicable, alejándose de un contundente mandato legislativo, bajo el argumento de que el asesinato en segundo grado, como todo asesinato, constituye "una afrenta a la sociedad".[37]

---

[37] Como expresó el ex Juez Asociado señor Rebollo López:

> No hay duda alguna que el asesinato de cualquier ser humano ofende [e] hiere la sensibilidad de todos los que vivimos y compartimos esta [...] isla. [...] Ahora bien, el hecho que existan individuos que sean capaces de incurrir en dicha conducta no puede tener el efecto de causar en la mente de las personas que tienen la obligación de velar porque exista en nuestro País un sistema de justicia justo para todos por igual la actitud de obviar el debido proceso de ley y de pasar por alto aquellos principios fundamentales sobre los cuales precisamente se apoya nuestro sistema de justicia. Esto es, no podemos permitir que la antipatía y otras emociones – que como seres humanos obvia y naturalmente experimentamos- nublen y confundan nuestro entendimiento jurídico, haciendo que nos olvidemos de la función y misión que como jueces venimos obligados a desempeñar. *Véase* Opinión disidente emitida por el ex Juez Asociado señor Rebollo López en Pueblo v.

A mi juicio, la Ley Núm. 221 es diáfana al establecer que los delitos graves de segundo grado severo, como lo es el asesinato en segundo grado bajo el Código Penal de 2004, tienen un término prescriptivo de **10 años**. Sin duda, ese es el ordenamiento jurídico que rige los trámites de este caso. Habida cuenta de que una Mayoría de este Tribunal resuelve que el asesinato en segundo grado bajo el Código Penal de 2004 es imprescriptible, sin prestarle mayor atención a los preceptos estatutarios expuestos en esta Opinión, concurro.

## VI

A la luz de los fundamentos señalados, concurro con la determinación emitida por una Mayoría de este Tribunal. En consecuencia, revocaría, por los fundamentos aquí enunciados, los dictámenes de los foros recurridos y devolvería el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.

Luis F. Estrella Martínez

Juez Asociado

---

López Rodríguez, 118 DPR 515, 544 (1987). (Énfasis suprimido).