PUEBLO DE PUERTO RICO, recurrido, *v.* HÉCTOR GUARDIOLA DÁVILA, acusado y peticionario.

*Número:* CE-86-243 *Resuelto:* 5 de junio de 1992

*Jorge L. Santiago Carrasquillo, Miguel A. Laborde, Enrique Rivera Mendoza,* de la *Sociedad para Asistencia Legal,* abogados del peticionario; *Rafael Ortiz Carrión, Procurador General, Josefa A. Román García, Procuradora General Auxiliar,* abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

# I

La solución final de este recurso exige una cuidadosa exposición cronológica de su trasfondo fáctico. El 5 de febrero de 1982 el Tribunal Superior, Sala de Bayamón, sentenció a Héctor Guardiola Dávila a cumplir una pena de uno (1) a tres (3) años por infracción a la Ley de Sustancias Controladas de Puerto Rico (G-81-33), suspendídale con sujeción a varias condiciones.

Así las cosas, por hechos ocurridos el 8 de junio de 1982, cuando alegadamente Guardiola Dávila vendió heroína (0.3820 gramos) al agente encubierto Agustín Rosario Burgos, el 25 de agosto se determinó en su ausencia causa probable y se ordenó su arresto con una fianza de $7,500 para permanecer en libertad provisional (Denuncia 12594-01). No fue arrestado.

Transcurrió el tiempo. El 23 de agosto de *1985* se presentaron en su contra dos (2) denuncias por apropiación ilegal agravada.([1]) El arresto de Guardiola Dávila por estas denuncias *nuevas* se efectuó el 15 de octubre. Mientras estaba en la penitenciaría, el 21 de octubre, se diligenció la orden de arresto por el delito de *1982* relacionado con la infracción al Art. 401 de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2401. El 5 de noviembre se celebró la vista preliminar y se encontró causa probable. *Entre la emisión de la referida orden de arresto y su diligenciamiento transcurrieron tres (3) años y dos (2) meses.*

El 20 de noviembre el Ministerio Público acusó y el 26 de noviembre se llevó a cabo la lectura de esa acusación. El 30 de diciembre del mismo año Guardiola Dávila solicitó su desestimación. Adujo que la tardanza irrazonable y negligente en el diligenciamiento de su arresto lo situaba en un estado de indefensión total y, además, que había transcurrido el término prescriptivo de tres (3) años.

---

([1]) Ambos casos fueron archivados el 13 de diciembre de 1985.

El tribunal celebró una vista evidenciaria. Conforme los alegatos y la transcripción parcial, en la misma Guardiola Dávila declaró residir en el Barrio Sabana, Cataño, hace dieciséis (16) años; haber estado en probatoria desde 1982 a 1985; haber asistido a sus citas con el socio-penal en el Centro Judicial de Bayamón; no haber salido de Puerto Rico ni haberse mudado de residencia, y haber trabajado desde 1983 en Antilles Shipping, Inc. Añadió no recordar sobre el día en que ocurrieron los hechos debido al tiempo transcurrido.

Testificó, además, la socio-penal Nidia Flores, quien desde septiembre de 1984 lo supervisó. Según su expediente, el 3 de septiembre, 11 de noviembre de 1982 y abril de 1983, unos agentes fueron a buscar información de Guardiola Dávila, mas ella no fue informada que existía caso pendiente alguno. Una vez Guardiola Dávila cumplió, se le expidió certificado de cumplimiento en febrero de 1985.

El agente Hermenegildo Martínez Remigio declaró que en varias ocasiones visitó la residencia de Guardiola Dávila pero no logró su arresto. No presentó los diligenciamientos negativos. En sus notas tan sólo constaba el arresto del imputado por *las otras causas desestimadas*. Diligenció la orden de arresto de esas otras dos (2) causas. Buscando entre órdenes de arresto viejas y archivadas, encontró las del presente caso y las diligenció en la Penitenciaría Estatal.

El agente William Marrero Burgos, en esencia, testificó que estuvo en la redada que se llevó a cabo en la madrugada para arrestar a Guardiola Dávila, quien logró escapar; que el agente Rosario Burgos participó; que sabía que Guardiola Dávila se encontraba en probatoria y que habló con su socio-penal; que no arrestó a Guardiola Dávila en el curso de seis (6) o siete (7) citas que tuvo con el Oficial Probatorio por encontrarse citado en otras vistas *en el mismo centro judicial*; que sus gestiones no constan por

escrito, y que informó la situación a otros agentes, incluso a Rosario Burgos, pero *ninguno mostró interés en diligenciar la orden.* T.E. Parcial, págs. 2–12.

Por su parte, el agente Agustín Rosario Burgos, quien alegadamente participó en la transacción, declaró que participó en el operativo durante una madrugada para realizar el arresto de Guardiola Dávila; que se personaron a su residencia y no vieron a nadie ni hablaron con nadie; que no recuerda que Marrero Burgos participara en dicho operativo; que se enteró que el imputado estaba en probatoria pero no quién le supervisaba, y que en ningún momento Marrero Burgos le pidió que lo arrestara. T.E. Parcial, págs. 13–19.

Finalmente, testificó el socio-penal Justino Silva Vega quien originalmente, antes de jubilarse de la Administración de Corrección, supervisó a Guardiola Dávila. Atestó que les proveyó a los agentes las direcciones residencial y de trabajo, y las fechas de citas; que nunca le informaron sobre orden de arresto pendiente ni se enteró que existieran luego de realizar gestiones con el Cuartel de Cataño y con la Secretaría del Tribunal de Bayamón; que los agentes no volvieron más desde principios de 1983, y que no le informó ni alertó a Guardiola Dávila de esas gestiones por entender que nada existía y, en caso contrario, para evitar que se escondiese. T.E. Parcial, págs. 24–43.

El tribunal (Hon. Fernando Grajales Rodríguez, Juez) no le dio crédito a la prueba de Guardiola Dávila y declaró sin lugar la moción. T.E. Parcial, págs. 43–44. Ante nos, reproduce el reclamo de que se violaron sus derechos constitucionales, en particular el debido proceso de ley, y el derecho a un juicio rápido y justo. Aduce que el diligenciamiento de la orden de arresto en su contra fue demorado por un tiempo opresivo e irrazonablemente largo y que el estado de indefensión en que se encuentra fue motivado por la crasa negligencia del Estado en diligenciar dicha orden, luego de haber transcurrido tres (3) años.

## II

■ La Constitución dispone que "[n]inguna persona será privada de su libertad o propiedad sin [el] debido proceso de ley ...". Art. II, Sec. 7, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 275. Nuestro ordenamiento sustantivo y adjetival, al igual que la jurisprudencia, regulan la vertiente procesal criminal del debido proceso de ley. Sin embargo, no hay precepto que expresamente fije el término matemático prudencial que debe existir entre la orden de arresto y su diligenciamiento.

■ Conforme al Código Penal aprobado en 1974, la acción en delitos graves prescribe a los tres (3) años. 33 L.P.R.A. sec. 3412. Esta disposición fue enmendada para extender el referido término a cinco (5) años, efectivo el 1ro de junio de 1983. Como los hechos de autos alegadamente ocurrieron el 8 de junio de 1982 y la orden de arresto fue emitida antes de la vigencia de la enmienda, el término prescriptivo es de tres (3) años. Sabido es que "se computará desde el día de la comisión del delito hasta la fecha en que se expida el mandamiento de arresto o de citación". 33 L.P.R.A. sec. 3413. Claro está, interrumpido el término con la expedición de la orden de arresto, como el Código Penal nada dispone, se crea la errónea apariencia de que esa interrupción es indefinida e infinita. Decimos errónea, pues, a poco que reflexionemos, notamos que ello atenta contra el verdadero propósito y fundamento que inspira el instituto de la prescripción.

> La importancia de interrumpir el término prescriptivo mediante el inicio de la acción penal, es evitar que se extinga la acción penal por el transcurso del tiempo. La razón de ser de la prescripción es lograr que el Estado le informe al imputado con suficiente anticipación de la intención de procesarlo y de la naturaleza del delito imputado, de forma que no se menoscabe la oportunidad de defenderse por razón de que la evidencia disponible para establecer su defensa desaparezca o se afecte con el

transcurso del tiempo. Véase *Pueblo v. Tribunal Superior*, 84 D.P.R. 24 (1961) y casos allí citados. D. Nevares-Muñiz, *Derecho Penal Puertorriqueño: Parte General*, Hato Rey, Ed. Inst. Desarrollo del Derecho, 1983, Sec. 6.5, pág. 334.

 En el pasado no habíamos abordado enteramente la cuestión ante nos, aunque existían ciertos destellos jurisprudenciales que rechazan el concepto absolutista de interrupción indefinida de la prescripción luego de emitida una orden de arresto. Así, en *Pueblo v. Tribunal Superior*, 84 D.P.R. 24, 28 (1961), establecimos que si "la interrupción del período prescriptivo se obtiene mediante la expedición de una orden de arresto, ésta debe cumplimentarse con diligencia *y que a menos que existan circunstancias excepcionales que lo impidan, la falta de diligenciamiento dentro de un período razonable puede anular los efectos de la interrupción*". (Énfasis suplido.)[3] Véase, además, *Pérez Vega v. Tribunal Superior,* 93 D.P.R. 749, 754 (1966). En ambos casos se obtuvo una orden de arresto poco tiempo

---

[3] El Tribunal Supremo federal ha resuelto que el período entre la emisión de la orden de arresto y su diligenciamiento forman parte del derecho a un juicio rápido en los procedimientos criminales protegido por la Constitución federal. *United States v. MacDonald*, 456 U.S. 1, 6–7 (1982). Véase, además, *United States v. Lovasco*, 431 U.S. 783 (1977). En *Dillingham v. United States*, 423 U.S. 64 (1975), se dejó sin efecto una orden de la Corte de Circuito que confirma una negativa a archivar los cargos contra un acusado que reclamó su derecho a un juicio rápido fundamentado en la dilación excesiva de veintidós (22) meses desde que se dictó la orden de arresto hasta que se diligenció, y en el transcurso del período de un (1) año desde su arresto hasta el juicio.

La mayoría de las cortes federales y estatales han reconocido el derecho a un juicio rápido y el debido procedimiento de ley en esta etapa de los procedimientos requiriendo un término razonable, ya por disposición estatutaria o interpretación constitucional, entre la emisión de la orden de arresto y su diligenciamiento. La razonabilidad del término dependerá de la totalidad de las circunstancias, atendiendo particularmente la disponibilidad y accesibilidad al imputado en la jurisdicción. Anotación, *Delay Between Filing of Complaint or Other Charge and Arrest of Accused as Violation of Right to Speedy Trial*, 85 A.L.R.2d 980 (1962); *Serna v. Superior Court (People)*, 707 P.2d 793 (Cal. 1985); *Kaikas v. Superior Court in and for County of Alameda*, 95 Cal. Rptr. 596 (1971); *Ibarra v. Municipal Court (People)*, 208 Cal. Rptr. 783 (1984); *State v. Ivory*, 564 P.2d 1039 (Or. 1977); *People v. Gulley*, 404 N.E.2d 1077 (1980); *State v. Almeida*, 509 P.2d 549 (Hawaii 1973); *United States v. González*, 748 F.2d 74 (2do Cir. 1984); *Scott v. State*, 461 N.E.2d 141 (1984); *State v. Groth*, 483 So. 2d 596 (1986); *State v. Kraft*, 501 So. 2d 313 (1987). Véase, además, Witkin, *California Criminal Procedure* Sec. 308, pág. 304, y pág. 411 y ss. del Suplemento de 1985.

*antes* de vencer el término prescriptivo, pero fueron diligenciadas *sin dilación excesiva alguna*: en el primero, pasado el término prescriptivo, a los cinco (5) días de emitida, y en el segundo, *dentro* del término prescriptivo.

█ El término prescriptivo no se interrumpe por arrestos practicados en otras acusaciones por el mismo delito, sobreseídas por no haberse celebrado el juicio dentro del término fijado por ley. *Pueblo v. Lugo*, 58 D.P.R. 183 (1941); *Pueblo v. Tribunal Superior*, 94 D.P.R. 59, 63–64 (1967). Tampoco se interrumpe con la presentación de otras acciones *no relacionadas*. Anotación, *Finding or Return of Indictment, or Filing of Information, as Tolling Limitation Period*, 18 A.L.R.4th 1202 (1982); C. Torcia, *Wharton's Criminal Law*, Sec. 90 y ss., pág. 415 y ss.

En *Pueblo v. Padilla Arroyo*, 104 D.P.R. 103, 107 (1975) —ante una alegada dilación entre la fecha de los hechos y aquella en que el agente encubierto juramentó la denuncia y se arrestó al acusado cuatro (4) meses después— dijimos "que el derecho a juicio rápido no ampara[ba] es[e] género de tardanza, *pero que ésta puede constituir una violación al debido proceso de ley. United States v. Marion*, 404 U.S. 307–320, (1971); 8A Moore, *Federal Practice*, 2d. ed., sec. 48.03[2], pág. 48-27; *Ross v. United States*, 349 F.2d 210 (D.C. Cir. 1965); *vide: Pueblo v. Tribunal Superior*, 81 D.P.R. 455, 469 (1959). Para que exista la violación debe concluirse que el interés en no perjudicar la defensa del acusado y su derecho a un juicio justo e imparcial se sobrepone en las circunstancias específicas que presente el caso al interés del gobierno en la dilación resultante". (Énfasis suplido.)

## III

El vacío en nuestro ordenamiento penal sustantivo y procesal en cuanto al término prudencial que debe haber

entre una orden de arresto y su diligenciamiento, no significa que el peticionario Guardiola Dávila esté desvalido y sin protección.

Es evidente que el debido proceso de ley requiere que todo imputado sea arrestado dentro de un término razonable a partir del momento en que fue denunciado y se ordenó su arresto. Se fomenta así una pronta y debida notificación que permite al imputado adoptar las medidas necesarias para una defensa adecuada. Adviértase que la orden de arresto presupone una determinación de causa probable, previa denuncia, en cuyo momento ya no existe la excusa de que el proceso investigativo en marcha pueda verse afectado por la exigencia de presentar los cargos. En otras palabras, ha desaparecido la razón clásica que de ordinario ha justificado la norma de abstención de los tribunales en la determinación de cuándo debe iniciarse el procedimiento criminal. D. Nevares-Muñiz, *Sumario de Derecho Procesal Penal puertorriqueño*, 2da ed. rev., Hato Rey, Ed. Inst. Desarrollo del Derecho, 1981, Sec. 5.65, pág. 43.

En ausencia de legislación o reglamentación expresa, el remedio judicial no puede confeccionarse mediante una regla o término fijo; es menester reconocer la necesidad de un período flexible sujeto al criterio de razonabilidad que es la medida para, a la postre, regular toda conducta humana. Según esta óptica, el concepto de razonabilidad se nutrirá circunstancialmente, entre otros, de los factores siguientes: gestiones oficiales tendentes a arrestar al imputado; si éste conoce de la orden de arresto en su contra; si ha huido o se ha ocultado; su disponibilidad a los fines de haberse podido realizar el diligenciamiento efectivo; si se conoce o debió conocerse su dirección o paradero; si se ha mudado de dirección; si ha salido de la jurisdicción; su movilidad en Puerto Rico, y otros.

■ En sana lógica, seguramente habremos sobrepasado el límite de lo razonable si desde que se emitió la orden de arresto ha transcurrido un período mayor al establecido por el Estado para la prescripción de la acción penal. Expirado ese término sin haberse diligenciado la orden de arresto, salvo circunstancias extraordinarias demostradas por el Ministerio Fiscal, se cancela o extingue el efecto interruptor o suspensivo de la prescripción de la acción penal y procede el archivo de la causa.

## IV

El peticionario Guardiola Dávila alegó y presentó prueba demostrativa de los perjuicios que le causaron la innecesaria e injustificada dilación provocada por parte del Estado para iniciar y dar seguimiento al procedimiento criminal en su contra, *como infracción al debido proceso de ley. Pueblo v. Padilla Arroyo,* supra, págs. 107–108.

En *Pueblo v. Soto Zaragoza,* 94 D.P.R. 350, 353 (1967), expresamos:

> Si bien es verdad que el acusado debe demostrar que la demora en radicar la acusación le ha causado perjuicio, como ésta es responsabilidad del Estado y se permite para su beneficio, *no puede requerírsele un peso de prueba exaccionante.* Como se dijo en *Jackson,* supra, muchas veces la dificultad en establecer el perjuicio es la mejor evidencia de su existencia. Siendo la defensa de coartada la que usualmente se presenta, no debe olvidarse que la mayoría de los infractores pertenecen a una estrata subcultural tipificada por la monotonía en el diario vivir, y que esta misma ausencia de acontecimientos importantes en sus vidas les impide distinguir un día de otro día. (Énfasis suplido.)

En autos no hay justificación legítima para el diligenciamiento excesivamente tardío. Guardiola Dávila no salió de Puerto Rico ni cambió de residencia; más aún, se encontraba bajo la jurisdicción directa del Tribunal Superior, Sala de Bayamón. Los agentes conocían todos esos detalles

y, además, la dirección de su trabajo y los días de sus citas con el oficial probatorio. Aun así optaron por dejar transcurrir el tiempo, ocasionando un estado de indefensión. Estaban enterados que podían iniciar los procedimientos para la revocación de la probatoria, así como su eventual reclusión, con tan sólo informar al oficial socio-penal de la orden de arresto. Sin embargo, se cruzaron de brazos permitiendo que el decursar del tiempo dejara su huella en la memoria de Guardiola Dávila y así lograr una ventaja con el testimonio del agente encubierto que alegadamente realizó la transacción.

Frente a estas realidades, la versión de los agentes de que Guardiola Dávila se ocultó y huyó para no ser arrestado no es creíble. No fue avalada con otra prueba contemporánea documental. De poco valor fueron las gestiones estériles supuestamente realizadas por dichos agentes del orden público, cuando tenían a su disposición mecanismos e información más útil y directa para descargar eficientemente sus labores.

*Se dictará sentencia revocatoria y en su lugar se ordenará el archivo definitivo de la acusación.*