Opinión disidente emitida por la
Juez Asociada Señora Ro-dríguez Rodríguez.
El propósito fundamental de la disposición fi-jando un término de prescripción es informar al acusado con suficiente anticipación de la inten-ción de procesársele y de la naturaleza del delito que se le imputa, de forma que no se menoscabe su oportunidad de defenderse antes de que la evi-dencia disponible para establecer su inocencia desaparezca o se oblitere con motivo del trans-curso del tiempo. Pueblo v. Tribunal Superior, 84 D.P.R. 24, 27 (1961).
Esta noción de la prescripción ha sido reiterada por este Tribunal en varias ocasiones. Pueblo v. Maxon, 159 D.RR. 25 (2003); Pueblo v. Martínez Rivera, 144 D.P.R. 631 (1997); Pueblo v. Vallone, Jr., 133 D.P.R. 427, 432 (1993); Pueblo v. Guardiola Dávila, 130 D.P.R. 585, 591 (1992); Pueblo v. Oliver Frías, 118 D.P.R. 285 (1987); Rabell Mar-tínez v. Tribunal Superior, 102 D.P.R. 39, 42 (1974); Pérez Vega v. Tribunal Superior, 93 D.P.R. 749,754 (1966). Cier-tamente, con la celebración de la vista de causa probable para el arresto comienza la acción penal, acto que informa al acusado del propósito del Estado en procesarlo. Hasta ese momento, el instituto de la prescripción protege al ciu-dadano y sirve como límite al ius puniendi del Estado. M.I. González Tapia, La prescripción en el derecho penal, Madrid, Ed. Dykinson, 2003, pág. 45. Luego de comenzada la acción penal, no obstante, la prescripción pierde su efica-cia, pues el Estado ejerció su prerrogativa de procesar al ciudadano en el término requerido en el cual podía hacerlo. Queda protegido el acusado, en términos de la celeridad *251 del proceso, por el derecho constitucional a un juicio rápido.
Desestimada una acción penal por la violación por parte del Estado de los términos del juicio rápido, éste tiene la facultad de iniciar otro proceso, salvo que se trate de deli-tos menos graves. Regla 67 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Ese otro proceso comienza con la determi-nación de causa probable para el arresto, según decidido recientemente por este Tribunal. Pueblo v. Camacho Delgado, 175 D.P.R. 1 (2008).(1) Siendo los términos descritos en el Código Penal de prescripción y no de caducidad, debe entenderse que el primer procedimiento interrumpe el tér-mino prescriptivo de la acción penal. Por lo tanto, el Estado tendría desde el día de la desestimación de la causa, un nuevo término prescriptivo en el cual procesar al imputado.
No debemos perder de perspectiva que una persona está cobijada por las exigencias del debido proceso de ley en esta etapa. Pueblo v. Esquilín Maldonado, 152 D.P.R. 257 (2000). Una dilación irrazonable por parte del Estado en reiniciar la causa sería razón suficiente para entender que el Estado renunció a su prerrogativa y desestimar esa nueva acción con perjuicio.
Por otro lado, no se interrumpiría infinitamente la ac-ción penal como parece insinuar la opinión mayoritaria, pues ya este Tribunal ha intimado que una segunda viola-ción a los términos de un enjuiciamiento rápido, vulneraría el derecho constitucional a un juicio rápido del acusado, lo que ocasionaría una desestimación de la causa con perjuicio. Pueblo v. Montezuma Martínez, 105 D.P.R. 710, 713 (1977); Pueblo v. Camacho Delgado, supra.
La Mayoría cita a Pueblo v. Lugo, 58 D.P.R. 183 (1941), como axioma judicial, sin evaluar su validez a la luz de las circunstancias del Puerto Rico de hoy. Si bien es cierto que debemos respetar los precedentes judiciales en pos de la *252 estabilidad y la certidumbre en la ley, éstos no constituyen “dogmas que deban seguirse ciegamente”, aun cuando me-diante una ponderación renovada del asunto, la antigua solución no satisfaga las exigencias de la sociedad presente. Am. Railroad Co. v. Comisión Industrial, 61 D.P.R. 314, 326 (1943). Igualmente, la decisión de la Ma-yoría obvia mencionar que existen algunas jurisdicciones estadounidenses que han tomado un camino contrario al examinar esta controversia, resolviendo que el inicio de la acción penal por parte del Estado interrumpe el término prescriptivo de la acción penal, aun cuando esta acción sea subsiguientemente desestimada o sobreseída sin haber re-caído sentencia. Véanse, e.g.: Hickey v. State, 174 S.W. 269 (1915); State v. Stewart, 438 A.2d 671 (1981); State v. Dwire, 409 N.W.2d 498 (1987); State v. Strand, 674 P.2d 109 (Utah 1983). De otro lado, varias jurisdicciones, inclu-yendo la federal, han legislado para revertir el resultado absurdo de que al desestimarse una acción no se inte-rrumpa el término prescriptivo para una nueva, conce-diendo términos razonables al Ministerio Público para que reinicien la acción penal. Véase, e.g., 18 U.S.C.A. sec. 3288.
Llegar a la solución de la Mayoría es pedirle al ordena-miento que cierre sus ojos ante procesos que ocurrieron dentro los tribunales de justicia del país. Es darle la es-palda al hecho de que el Estado activó su maquinaria opor-tunamente para cumplir con su obligación de procesar a aquellos que con sus actos laceran el fino orden establecido por el Código Penal para mejorar la convivencia de todos en la sociedad. Las reglas de Procedimiento Criminal, pre-viendo que pudiese ocurrir alguna anomalía durante el procesamiento criminal de algún ciudadano, dictaron que el Estado podría volver a presentar una acción, salvo si se trata de una desestimación por violación a los términos de rápido enjuiciamiento en delitos menos graves. Regla 67 de Procedimiento Criminal, supra. La decisión de la mayoría en este caso coarta dicha facultad del Estado.
*253 La opinión de la Mayoría no cumple en nada el propó-sito fundamental de la prescripción, pues ya la persona imputada de delito conoce que el Estado tiene la intención de procesarlo desde la primera ocasión en que fue sometido a una vista de causa probable para el arresto. Es poco probable que el imputado pierda evidencia o testigos funda-mentales para su defensa entre el primer proceso y el se-gundo, en casos como el de autos en que la dilación entre la desestimación del primer proceso y la presentación del se-gundo tardó sólo siete días. La particularidad del caso ante nuestra consideración no puede ser sostén de la generali-dad de casos que se tramitan ante los tribunales del país diariamente.(2)
En suma, creo que encontrar causa probable para el arresto interrumpe el término prescriptivo de la acción penal, el que vuelve a correr completo en caso de una deses-timación de la causa por violación a los términos de un enjuiciamiento rápido. En la presentación de la segunda causa, al acusado lo protege el debido proceso de ley, en caso de dilación irrazonable por parte del Estado.
Por último, hago constar las implicaciones que podrían tener las expresiones del Tribunal en esta opinión en con-junto con la decisión dictada en Pueblo v. Camacho Delgado, supra. El resultado neto de ambas opiniones suge-rido por el Tribunal es que ante una desestimación por razón de la violación a la Regla 64(n), supra (violación a los términos de rápido enjuiciamiento) en casos de delitos graves, el Ministerio Público puede presentar la acción nueva-mente, regresando a la etapa de vista de causa probable para el arresto, siempre que no haya prescrito el de- *254 lito, contando el término desde la comisión de los hechos a la nueva vista de Regla 6 (34 L.RR.A. Ap. II).
En ambas opiniones el Tribunal hace hincapié en que una desestimación es el fin de la causa penal, es decir, la extinción de esa acción penal. Intentan, a mi juicio sin éxito, particularizar estas expresiones a la situación de una desestimación mediante la Regla 64(n), supra, es de-cir, por violación a los términos de un enjuiciamiento rápido. No obstante, ¿qué ocurre en los demás casos de la citada Regla 64? ¿Acaso una desestimación según cual-quiera de los demás incisos no es igualmente el fin de la acción penal? ¿Tiene que en todo caso el Estado volver a Regla 6, supra, luego de una desestimación por cualquier motivo?
En Pueblo v. Camacho Delgado, supra, repetido en la opinión de hoy, el Tribunal expresa que la Regla 66, supra,(3) “alude a defectos de forma o a la inobservancia de los requisitos ministeriales que le imponen las Reglas de Procedimiento Criminal al Ministerio Público”, por lo que no se puede utilizar para “soslayar el efecto de una deses-timación por la violación de los términos de ‘rápido enjui-ciamiento’ ”. Es decir, parece decir el Tribunal que existen dos tipos de desestimación: aquellas relacionadas a “defec-tos de forma” o “inobservancia de requisitos ministeriales” y otras que suponen el “fin de la acción penal”, las cuales requieren que se comience un nuevo proceso. Y me pre-gunto, ¿realmente las reglas distinguen entre los efectos de una desestimación por una razón o por otra? ¿Cómo se di *255 ferencian? ¿Qué guías ofrece este Tribunal para identificar unas y otras?
Partiendo de la premisa de que sí haya diferencia entre las desestimaciones, ¿qué ocurre con aquellos incisos de la citada Regla 64 que no caen bajo las categorías de “defectos de forma” o “inobservancia de requisitos ministeriales”? Por ejemplo, la Regla 64(p) en la que el acusado alega que no se le encontró una causa probable para acusar conforme a derecho. 34 L.P.R.A. Ap. II. A priori, no me parece que ese inciso se trate de un “defecto de forma” o un “requisito ministerial”. En caso de que se declare “con lugar” una moción de desestimación bajo este inciso, ¿es necesario vol-ver a la citada Regla 6? Parece que según la solución del Tribunal sí, pues una desestimación, según el Tribunal, es el “fin de la acción penal”.(4) Éstas y muchas otras son las interrogantes e implicaciones que el lenguaje y la combina-ción de ambas decisiones emitidas por esta Curia produci-rán y seguramente tendremos que responder próxima-mente.
Por los fundamentos expresados, disiento del curso tra-zado por la mayoría hoy.

 Se hizo constar mi disenso sin opinión escrita.

 Según la opinión mayoritaria, el acusado en este caso estuvo más de cuatro años entre la presentación de la acusación y la celebración del juicio. Aunque se menciona que el peticionario había sido convicto de otros delitos, no surge cuáles fueron las razones para semejante dilación. De todos modos, tomando como cierto la irracionabilidad de la dilación, no es correcto llegar a la solución de hoy por causa de las circunstancias particulares del caso ante nuestra consideración.

 “Si la moción se basare en defectos de la acusación, denuncia o pliego de especificaciones que pudieren subsanarse mediante enmienda, el tribunal ordenará se haga la enmienda, y denegará la moción. Si el tribunal declarare con lugar una moción basada en defectos en la presentación o tramitación del proceso, o en la acu-sación o denuncia, podrá también ordenar que se mantenga al acusado bajo custodia, o que continúe bajo fianza por un término específico, sujeto a la presentación de una nueva acusación o denuncia. Nada de lo aquí expresado afectará las disposiciones sobre los términos de prescripción.” (Énfasis suplido.) Regla 66 de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

 Esta solución, en ocasiones, podría ser peor para el acusado. Imaginemos un acusado que se le encuentra causa para arresto en una vista preliminar y se le presenta acusación. Dicha acusación es desestimada mediante la Regla 64(p), 32 L.P.R.A. Ap. II. Según la práctica actual, si la desestimación fue por ausencia total de prueba, el Ministerio Público tiene a su haber solicitar un certiorari a un tribunal de mayor jerarquía o celebrar una vista preliminar en alzada. Si decide celebrar la vista, y se le encuentra “no causa”, terminan en ese momento las oportunidades del Ministerio Público de procesarlo. En cambio, con el curso decisorio trazado por la Mayoría, el Ministerio Público, a pesar de que tendrá la liviana carga de una vista de causa probable para el arresto, tendría dos nuevas oportunidades para vistas preliminares. Estos nuevos procesos, en teoría, podrían seguirse presentando siem-pre que se trate de un delito grave y no haya pasado el término prescriptivo.