Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| EL PUEBLO DE PUERTO RICO  Recurrido  v.  EFRAÍN RIVERA RODRÍGUEZ  Peticionario | KLCE202400864 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo  Caso Núm.: C1VP2023-1038 al C1VP2023-1045  Sobre: Art. 142 (H) (5 cargos); Art. 144 (E) (2 cargos) y 144 (A) (1 cargo) del C.P. (2004) |
|---|---|---|

Panel integrado por su presidente, el Juez Bermúdez Torres, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de agosto de 2024.

Comparece Efraín Rivera Rodríguez (en adelante, señor Rivera Rodríguez y/o peticionario) mediante un recurso de *Certiorari* para solicitarnos la revisión de la *Resolución* emitida el 9 de julio de 2024, y notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de Arecibo (en adelante, TPI).[1] Mediante la *Resolución* recurrida el foro primario declaró *No Ha Lugar* una *Moción solicitando desestimación por prescripción.*[2]

Por los fundamentos que expondremos, se *expide* el auto de *Certiorari* y se revoca la *Resolución* recurrida.

I

El 3 de abril de 2013, el Ministerio Público emitió una autorización para someter caso ante un magistrado en ausencia y

---

[1] Apéndice del recurso, a las págs. 47-81.
[2] 34 LPRA Ap. II, R. 51.

mediante declaración jurada contra el aquí peticionario.[3] En esa misma fecha, el tribunal de instancia encontró causa probable para arrestar al peticionario por infracción a los siguientes delitos: Artículo 142(h) sobre agresión sexual (5 cargos); Artículo 144(e) sobre actos lascivos (2 cargos); y Artículo 144(a) sobre actos lascivos (1 cargo), todos del Código Penal del Estado Libre Asociado de Puerto Rico de 2004.[4] Además, en esa misma fecha, el TPI emitió la correspondiente orden de arresto por los delitos antes descritos.[5]

Luego, el 25 de agosto de 2023, se diligenció la Orden de arresto,[6] por lo que el peticionario fue llevado al Tribunal de Primera Instancia, Sala Municipal de San Juan (Tribunal Municipal) para cumplir con las disposiciones de la Regla 22 (c) de las de Procedimiento Criminal.[7] Subsiguientemente, el Tribunal Municipal emitió el auto de prisión provisional y se le impuso una fianza por la cantidad de $50,000.00 dólares más supervisión electrónica en cada caso.[8]

Posteriormente, el 6 de septiembre de 2023, el Ministerio Público presentó una *Solicitud de enmienda a la denuncia.* Solicitó al foro primario que se enmendaran las denuncias presentadas habida cuenta de que debían corregirse los números de querellas.[9]

Así las cosas, el 15 de septiembre de 2023, el peticionario presentó una *Moción solicitando desestimación por prescripción.*[10] En el escrito, esencialmente, expuso que conforme a la Regla 51 de las de Procedimiento Criminal,[11] el término que tenía el Estado, para diligenciar la *Orden de arresto* por los delitos imputados, era de cinco (5) años, a partir de la expedición de la misma. A tenor, adujo

---

[3] Apéndice del recurso, a la pág. 4.
[4] Apéndice del recurso, a las págs. 48-49. Ley Núm. 149-2004, 33 LPRA sec. 4772 (Ed. 2010).
[5] Apéndice del recurso, a la pág. 1.
[6] *Íd.,* a la pág. 2.
[7] *Íd.,* a las págs. 13 y 16. 34 LPRA Ap. II, R. 22.
[8] Apéndice del recurso, a las págs. 17 y 23.
[9] *Íd.,* a las págs. 24-25.
[10] *Íd.,* a las págs. 26-31.
[11] 34 LPRA Ap. II, R. 51.

que el Estado tenía hasta el 3 de abril de 2018 para diligenciar la *Orden de arresto* en cuestión, por lo que, habiéndose diligenciado la referida orden el 25 de agosto de 2023, procedía el archivo de los casos del título. Por su parte, el 3 de octubre de 2023, el Ministerio Público presentó su oposición.[12] En la misma, planteó que la solicitud de desestimación presentada por el peticionario era prematura, puesto que los argumentos esgrimidos en la misma se debían atender en la *Vista preliminar*, la cual aún no había sido celebrada. A su vez, arguyó que los delitos imputados no estaban prescritos. En respuesta, mediante *Resolución* del 12 de octubre de 2023, el tribunal de instancia convocó a las partes a una vista evidenciaria, la cual quedó programada para el 26 de octubre de 2023.[13] Insatisfecho con lo ordenado, el 25 de octubre de 2023, el Ministerio Público presentó una reconsideración,[14] la cual fue denegada dos (2) días más tarde.[15]

Según se desprende de los autos, el foro primario celebró la vista los días 18 de enero, 26 de marzo, 10 de mayo y 7 de junio de 2024. Allí se recibió prueba tanto del Ministerio Público como del peticionario y se proveyó oportunidad a los representantes legales de las partes para presentar sus argumentos.[16]

Producto de la vista celebrada, el tribunal de instancia emitió una *Resolución* mediante la cual declaró *No Ha Lugar* la solicitud de desestimación.[17] El aludido foro, principalmente, basó su determinación en que:

> . . . la prueba desfilada y creída por el Tribunal dem[ostró] que el imputado conocía que existía un proceso judicial instado en su contra por razón de que la Sra. Carmen Rivera Rodríguez así se lo manifestó, circunstancia que provocó la ruptura de su relación con la pareja con quien convivió en San Lorenzo; que, luego de enterarse de la radicación de la querella en su contra,

---

[12] Apéndice del recurso, a las págs. 32-36.
[13] *Íd.,* a las págs. 37-40.
[14] *Íd.,* a las págs. 41-45.
[15] *Íd.,* a la pág. 46.
[16] *Íd.,* a las págs. 49-50.
[17] *Íd.,* a las págs. 48-81.

se mudó a pueblos lejanos donde no se le conocían vínculos; que el cambio de domicilio tuvo el propósito de evadir su detención y evitar enfrentar el procedimiento puesto en marcha por su hermana, Sra. Rivera Rodríguez; que dichos cambios de domicilio definitivamente militaron contra su disponibilidad para que se pudiera concretar su arresto; que la Sra. Rivera Rodríguez desconocía su paradero y que no existe base en la prueba para concluir que dicha información debía ser conocida por ella.[18]

Por otra parte, el foro primario manifestó que el peticionario incumplió con la carga probatoria requerida para demostrar que las acciones y omisiones del Estado lo colocaron en un estado de indefensión.

Así, pues, el TPI concluyó que, a base de la **totalidad de las circunstancias**, no procedía la desestimación bajo los fundamentos de prescripción ni al amparo de la Regla 51 de las de Procedimiento Criminal.[19]

Insatisfecho, el 9 de agosto de 2024, el peticionario compareció ante nos mediante un recurso de *Certiorari*[20] y esgrimió la comisión del siguiente señalamiento de error:

PRIMER ERROR: ERRÓ EL TRIBUNAL AL INTERPRETAR INCORRECTAMENTE LAS DISPOSICIONES DE LA REGLA 51 DE PROCEDIMIENTO CRIMINAL Y NO DESESTIMAR LAS DENUNCIAS POR UNA DILACI[Ó]N EXCESIVA EN EL DILIGENCIAMIENTO DE LAS [Ó]RDENES TODO ESTO EN EXCESO DE LOS 5 A[Ñ]OS PROVISTOS POR LA REGLA.

En la misma fecha de la presentación del recurso, el peticionario presentó una solicitud de auxilio de jurisdicción, la cual fue denegada mediante *Resolución* emitida el 8 de agosto de 2024. El 19 de agosto de 2024, compareció el Procurador General mediante *Escrito en cumplimiento de orden*. Con el beneficio de la comparecencia de ambas partes, procederemos a exponer el derecho aplicable.

---

[18] Apéndice del recurso, a la pág. 80.
[19] *Íd.,* a la pág. 81.  34 LPRA Ap. II, R. 51.
[20] Intitulado Alegato.

II

## A. Expedición del recurso de *Certiorari*

Todo ciudadano tiene un derecho estatutario a que un tribunal de superior jerarquía revise los dictámenes emitidos por los tribunales de jerarquía inferior.[21] A tales efectos, el *Certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior.[22] Conviene destacar, que la discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[23] A esos efectos, la discreción se "nutr[e] de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna".[24] Al amparo de ello, nuestro Tribunal Supremo ha manifestado, en lo pertinente, que la parte afectada por alguna orden o resolución interlocutoria en un proceso criminal, puede presentar un recurso de *Certiorari* mediante el cual apele el dictamen interlocutorio del foro primario.[25] A tenor, la Regla 40 del Reglamento del Tribunal de Apelaciones[26], esgrime que este Tribunal deberá considerar los siguientes criterios para expedir un auto de *Certiorari:*

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

---

[21] *Hernández Jiménez et al. v. AEE et al.*, 194 DPR 378, 382 (2015); *García Morales v. Mercado Rosario*, 190 DPR 632, 638 (2014).
[22] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023)*; 800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).
[23] *Mun. de Caguas v. JRO Construction, Inc.* 201 DPR 703, 712 (2019); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434-435 (2013).
[24] *SLG Zapata-Rivera v. J.F. Montalvo, supra*, a la pág. 43; *Santa Aponte v. Srio. del Senado*, 105 DPR 750, 770 (1977).
[25] *Pueblo v. Román Feliciano*, 181 DPR 679, 690 (2011).
[26] 4 LPRA Ap. XXII-B, R.40.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan-un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Por otra parte, precisa subrayar que, en virtud de nuestro esquema probatorio, esta Curia le debe gran deferencia a las determinaciones de hecho, la apreciación de la prueba testifical y las adjudicaciones que efectúa el tribunal de instancia.[27] Por tanto, únicamente debemos de interferir con los tribunales de instancia, en el ejercicio de sus facultades discrecionales, cuando existan circunstancias extraordinarias en las que se demuestre que el aludido foro: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[28]

## B. Regla 51 de Procedimiento Criminal

Sabido es que la protección del debido proceso de ley en su vertiente procesal se activa únicamente cuando el Estado transgrede el interés de libertad o propiedad de una persona.[29] Una vez se demuestra que existe el referido interés, el Estado está obligado a proveer un procedimiento justo, una notificación adecuada y la oportunidad de ser oído y defenderse.[30] Particularmente, en la esfera penal, la aplicación de las antedichas garantías se ha extendido a las actuaciones del Estado antes del arresto y al inicio de la acción penal.[31] A esos efectos, se ha entendido que la dilación en diligenciar

---

[27] *Pueblo v. Rivera Montalvo*, 205 DPR 352, 373 (2020).
[28] *Íd.*; *Pueblo v. Irizarry*, 156 DPR 780, 788–789 (2002).
[29] *Díaz Carrasquillo v. García Padilla;* 191 DPR 97, 110-111 (2014); *Pueblo v. Esquilín Maldonado,* 152 DPR 257, 262 (2000).
[30] *Com. Elect PPD v. CEE et al.,* 205 DPR 724, 744 (2020); *Pueblo v. Esquilín Maldonado,* supra, a la pág. 262.
[31] *Pueblo v. Esquilín Maldonado,* supra, a la pág. 262.

un arresto puede constituir una violación al debido proceso de ley.[32] Por ello, "el único término que "obliga" al Estado a actuar es el término prescriptivo que el ordenamiento señala para los delitos".[33]

En mérito de lo anterior, la Regla 51 de Procedimiento Civil dispone un término prescriptivo para diligenciar una orden de arresto, el cual es igual al término prescriptivo del delito imputado. El aludido término se computará a partir de la expedición de la orden de arresto. En cuanto aquellos delitos que tienen un término prescriptivo mayor de cinco (5) años, o que no prescriban, el término para diligencia la orden de arresto será de (5) años. En el caso de estos delitos, el término prescriptivo igualmente se computará desde que se expida la orden de arresto.[34] Así, pues, si, desde que se emitió la orden de arresto transcurre un periodo mayor al dispuesto por el Estado para la prescripción de la acción penal, sin haberse diligenciado la referida orden, se cancelará el efecto interruptor de la prescripción.[35] De manera que, será necesario que el Estado tramite una orden de arresto con premura, puesto que, la falta de diligenciamiento, dentro de un periodo razonable, podría ocasionar el archivo de la causa y/o poner en juego la libertad de una persona.[36]

Ahora bien, ante la existencia de circunstancias extraordinarias, el juzgador de instancia puede aceptar una orden de arresto diligenciada fuera de los términos antes reseñados. En la tarea de determinar la presencia de circunstancias extraordinarias que justifican la inacción del Estado, se deberá tomar en consideración lo siguiente:

> (1) Gestiones oficiales tendentes a arrestar al imputado.

---

[32] *Íd.*
[33] *Íd.*
[34] 34 LPRA Ap. II, R. 51.
[35] *Pueblo de Puerto Rico v. Guardiola Dávila,* 130 DPR 585, 595 (1992).
[36] *Íd.*; *Pueblo v. Esquilín Maldonado,* supra, a la pág. 267.

(2) Si el acusado conoce de la orden de arresto en su contra.

(3) Si el acusado ha huido o se ha ocultado.

(4) La disponibilidad del acusado a los fines de haberse podido realizar el diligenciamiento efectivo.

(5) Si se conoce o debió conocerse su dirección o paradero.

(6) Si se ha mudado de dirección.

(7) Si ha salido de la jurisdicción del Estado Libre Asociado.

(8) Su movilidad dentro de la jurisdicción del Estado Libre Asociado.[37]

Por otra parte, en el contexto del debido proceso de ley, el juzgador, además, deberá considerar si el Estado colocó al imputado en un estado de indefensión y cuáles fueron las razones de la demora para diligenciar la orden de arresto.[38] Al amparo de lo anterior, para que proceda un dictamen de violación al debido de ley, el agraviado debe de demostrar que:

(i)     la dilación le causó un estado de indefensión, y

(ii)    la razón que tuvo el Estado para tal dilación no está razonablemente justificada más allá de la liberalidad con que se debe analizar el proceso investigativo. [39]

El antedicho criterio de razonabilidad debe nutrirse de la consideración de los factores enumerados en la Regla 51 de Procedimiento Criminal.[40]

### III

Habida cuenta de que el recurso ante nuestra consideración se trata de un *Certiorari,* este tribunal revisor debe determinar, como cuestión de umbral, si procede su expedición. En su único

---

[37] 34 LPRA Ap. II, R. 51.
[38] *Pueblo v. Esquilín Maldonado,* supra, a la pág. 263.
[39] *Íd.*
[40] *Pueblo de Puerto Rico v. Guardiola Dávila,* supra, a la pág. 594.

señalamiento de error, el peticionario sostiene que el foro primario falló al no desestimar las denuncias presentadas en su contra. Aseveró que conforme a la Regla 51 de Procedimiento Criminal,[41] el Estado se excedió del término dispuesto para diligenciar la *Orden de arresto*. Igualmente, sostuvo que de la prueba desfilada no se puede concluir que las *circunstancias excepcionales* enumeradas en la referida regla están presentes en este caso. Luego de un minucioso examen de los autos ante nuestra consideración, incluyendo la revisión de los sendos escritos presentados por las partes, así como considerar que se encuentran presente elementos que sin duda lograron activar nuestra discreción, hemos acordado expedir el auto de *Certiorari*.

De entrada, puntualizamos que en el caso del título no existe controversia en que, el **3 de abril de 2013**, se encontró causa probable para arrestar al peticionario en ausencia, por infracción a los delitos expresados en la relación de hechos que antecede y que, en esa misma fecha, se expidió una *Orden de arresto* en su contra. Tampoco existe controversia en que las denuncias presentadas contra el señor Rivera Rodríguez fueron por hechos alegadamente cometidos en los años 2007, 2008, 2009, 2010 y 2011.[42] De igual forma, es un hecho incontrovertido que la *Orden de arresto* en cuestión fue diligenciada el **25 de agosto de 2023**.

Con lo anterior en mente, es de ver que, tenemos ante nuestra consideración la siguiente controversia: *¿procede desestimar las denuncias instadas contra el aquí peticionario al amparo de la Regla 51 de las de Procedimiento Criminal,[43] tras haberse diligenciado en exceso de los cinco (5) años provistos por nuestro ordenamiento jurídico?* En el caso del título, el foro *a quo* dispuso que, luego de

---

[41] 34 LPRA Ap. II, R. 51.
[42] Apéndice del recurso, a la pág. 49.
[43] 34 LPRA Ap. II, R. 51.

evaluar la totalidad de las circunstancias acaecidas durante las vistas celebradas, no procedía. Ahora bien, examinado la totalidad del expediente ante nos, así como los sendos escritos ante nuestra consideración y el marco legal aplicable, resolvemos que el tribunal de instancia se equivocó, por lo que procede su revocación. Elaboramos.

Conforme reseñamos, la Regla 51 de Procedimiento Criminal dispone un término prescriptivo para diligenciar una orden de arresto, el cual es igual al término prescriptivo del delito imputado y/o de cinco (5) años, en el caso de los delitos que tienen un término prescriptivo mayor de cinco (5) años, o que no prescriben. Según la aludida regla, los antedichos términos deben computarse a partir de la expedición de la orden de arresto.[44] En consecuencia, si transcurre un periodo mayor al dispuesto por el Estado para la prescripción de la acción penal, sin haberse diligenciado la orden de arresto, se cancelará el efecto interruptor de la prescripción y se podría archivar la causa.[45] No obstante lo anterior, el juzgador podría permitir una orden de arresto diligenciada en un término mayor a los dispuestos en la Regla 51, si considera que existen *circunstancias extraordinarias.*[46] De igual forma, antes de archivar la causa, ante la falta de diligencia del Estado en tramitar la orden de arresto, el agraviado deberá demostrar que:

    (i)     la dilación le causó un estado de indefensión, y

    (ii)    la razón que tuvo el Estado para tal dilación no está razonablemente justificada más allá de la liberalidad con que se debe analizar el proceso investigativo.[47]

En cuanto al *primer* criterio, el foro primario resaltó que el peticionario incumplió con la carga probatoria requerida por el ordenamiento vigente para demostrar que las acciones u omisiones

---

[44] *Íd.*
[45] *Pueblo de Puerto Rico v. Guardiola Dávila,* supra, a la pág. 595.
[46] 34 LPRA Ap. II, R. 51.
[47] *Pueblo v. Esquilín Maldonado,* supra, a la pág. 263.

del Estado le hubiesen colocado en un estado de indefensión.[48] Ello, puesto que el peticionario se limitó a argumentar la existencia del alegado estado de indefensión, sin haber desfilado prueba alguna en apoyo de dicho reclamo durante la vista.[49]

En cuanto al *segundo* criterio puntualizamos que, de la prueba recibida por el TPI y que surge de la *Resolución* en revisión, y contrario a lo resuelto, se desprende indubitadamente que la razón por la que el Estado se dilató en diligenciar la orden de arresto no puede justificarse razonablemente. Surge de la *Resolución recurrida* que la investigación dirigida a lograr el arresto del peticionario se la asignó inicialmente al agente Carlos M. Rosado Torres (agente Rosado Torres). Una de las primeras gestiones realizadas por este fue entrevistar a la madre de la perjudicada, quien no consiguió proveerle la dirección específica del peticionario. También entrevistó a una tía del imputado, quien tampoco tenía información sobre el paradero del aquí peticionario. Posteriormente, la madre de la perjudicada le indicó al agente Rosado Torres que el peticionario estaba residiendo en San Lorenzo, de modo que este entendió que se trataba del Barrio San Lorenzo de Morovis. De ahí, el agente se dio a la tarea de visitar el referido barrio y varias galleras de aludido pueblo, ya que el peticionario, presuntamente, frecuentaba estos espacios. Al no poder dar con el paradero del peticionario, el fiscal de cargo le autorizó a someter cargos en ausencia. Así, pues, la investigación para diligenciar la *Orden de arresto* pasó a la División de Arrestos Especiales de Arecibo. La referida división puso el caso en manos del agente Carlos Colón Rosa, quién concentró su investigación en realizar varias entrevistas en el Bario San Lorenzo de Morovis y visitar, en varias ocasiones, una gallera en el pueblo de Ciales. Luego de un mes, el agente entregó la *orden* de arresto a la

---

[48] Apéndice del recurso, a la pág. 80.
[49] *Íd.*

División de Arresto y Extradiciones de la Policía (División de Arresto), quien incluyó al peticionario en la lista de los diez (10) más buscados del distrito de Arecibo. De ahí, no se realizó ningún esfuerzo para diligenciar la *Orden de arresto*, hasta que el peticionario fue arrestado, allá para 2023.[50] Se desprende inequívocamente que el Estado tardó una década, es decir diez (10) años, en lograr el arresto del peticionario, quien, conforme a la prueba recibida y creída por el juzgador de los hechos, siempre estuvo en la jurisdicción de Puerto Rico. Puntualizamos que lo anterior se hizo constar por el foro recurrido cuando manifestó lo siguiente:

> . . . [e]s determinación del Tribunal conforme a la prueba desfilada y creída, que la Policía realizó una serie de diligencias dirigidas al arresto del imputado que, en su etapa inicial de investigación para la radicación de cargos y para lograr identificar el paradero del imputado a fin de diligenciar la orden de arresto, **adolecieron de defectos crasos que militaron contra su efectividad y que, por espacio de nueve años se limitaron a mantener en vigor la inclusión del imputado en la lista de las diez personas más buscadas en la región de Arecibo [...].**[51]

Además, nos parece que las gestiones para dar con el paradero del peticionario fueron injustificadamente exiguas, hecho que quedó demostrado ante el foro recurrido. Ejemplo de lo anterior fueron las propias expresiones que surgen de la *Resolución* recurrida:

> . . . nos parece casi inverosímil que el agente Rosado Torres haya interpretado o deducido que cuando la Sra. Rivera Rodríguez le transmitió que tenía información de que el imputado se encontraba en San Lorenzo, se trataba del barrio San Lorenzo de Morovis y que no se haya planteado ni por un instante la posibilidad de que se tratara del pueblo de San Lorenzo. En ese sentido, durante su testimonio, la Sra. Rivera Rodríguez declaró que la información que le fue comentada y que brindó al agente Rosado Torres se refería al pueblo de San Lorenzo. Más aún, no podemos entender cómo el agente investigador Rosado Torres no haya considerado la posibilidad de que se tratara del pueblo de San Lorenzo luego de los resultados infructuosos en ubicar al

---

[50] Apéndice del recurso, a las págs. 77-78.
[51] *Íd.*, a la pág. 80. (Énfasis nuestro).

imputado en el barrio San Lorenzo de Morovis. Una gestión tan simple como una nueva entrevista telefónica con la Sra. Carmen Rivera Rodríguez hubiese bastado para identificar la necesidad de ampliar la investigación a dicha municipalidad. El mismo razonamiento nos parece aplicable al agente Colón Rosa, tratándose de un agente de amplia experiencia en, precisamente, localizar a personas para lograr su arresto.

Asimismo, ante la inefectividad de las gestiones realizadas por el agente Rosado Torres y, posteriormente, por el agente Colón Rosa para dar con el paradero del imputado, resulta evidente la necesidad de que se hubieran agotado otras herramientas de investigación tales como indagar en los registros de las empresas de servicios de agua, electricidad, Departamento de Obras Públicas, Departamento de la Familia o empresas proveedoras de servicios de telefonía, entre otras, a fin de obtener información sobre alguna dirección asociada a la persona investigada. Conforme a la prueba desfilada, ninguna de dichas herramientas de investigación fue utilizadas por los agentes Rosado Torres y Colón Rosa.[52]

Por otra parte, juzgamos que no existe cabida para que pueda concluirse que la gestión de la División de Arresto, de colocar al peticionario en la lista de los diez (10) más buscados de la región de Arecibo, pueda ser considerada un hazañoso trámite que salve lo insalvable, la inacción del Estado en su deber de investigar responsablemente cómo dar con el paradero del aquí peticionario en el término provisto por la precitada Regla 51 y proceder a un arresto en un tiempo razonable y oportuno.

Bajo el crisol doctrinado previamente expuesto, el criterio de razonabilidad debe nutrirse de la consideración de los siguientes factores: (i) gestiones oficiales tendentes a arrestar al imputado; (ii) si éste conoce de la orden de arresto en su contra; (iii) si ha huido o se ha ocultado; (iv) su disponibilidad a los fines de haberse podido realizar el diligenciamiento efectivo; (v) si se conoce o debió conocerse su dirección o paradero; (vi) si se ha mudado de dirección; (vii) si ha salido de la jurisdicción; (viii) su movilidad en Puerto Rico, y otros.

---

[52] Apéndice del recurso, a la pág. 79.

En este caso, según el detallado resumen de los testimonios presentados en corte abierta e incluido en la *Resolución* recurrida, el único factor que pudo haber razonablemente contribuido a la dilación del Estado en tramitar la *Orden de arresto* fue la mudanza del peticionario al pueblo de San Lorenzo y, posteriormente, al pueblo de Yabucoa. Por otro lado, de la propia *Resolución* recurrida no se desprende que el peticionario hubiese viajado o residido en algún estado de los Estados Unidos u otro país a partir del año 2012.[53] Dado a todo lo anterior, razonamos que en el caso del título no podemos concluir que el peticionario salió de la jurisdicción de Puerto Rico, huyó o se ocultó. Abona a lo anterior que conforme al testimonio del señor Agenol González, quien trabajó con el peticionario en la construcción de unas veinticinco (25) casas, que el peticionario frecuentaba galleras en varios pueblos y se conducía con aparente normalidad por el Pueblo de San Lorenzo.[54] Por tanto, tampoco podríamos justipreciar que su falta de disponibilidad fue intencionada y con el fin de evadir el arresto. En cuanto a las gestiones realizadas por los oficiales tendentes a lograr el arresto, y cónsono a las propias conclusiones del foro primario, hemos sido enfáticos que las mismas fueron deficientes; prueba de esto es el hecho de que ninguno de los agentes que intervino en la investigación se dio a la tarea de indagar con las agencias que proveen servicio de agua y electricidad, con compañías proveedoras de servicios de telefonía, entre otras agencias y establecimientos de servicio público.[55] Además, al igual que el juzgador de instancia, se nos hace difícil comprender la razón por la cual los agentes limitaron su búsqueda al Barrio de San Lorenzo en Morovis y no auscultaron la posibilidad de que el peticionario se hallaba en el Pueblo de San

---

[53] Apéndice del recurso, a la pág. 76.
[54] *Íd.*, a la pág. 76.
[55] *Íd.*, a la pág. 79.

Lorenzo. Razonamos que, si los agentes hubiesen realizado una búsqueda responsable y exhaustiva, hubiese sido más probable que dieran con el paradero del peticionario antes de que transcurriera el término que provee la Regla 51 para diligenciar la orden de arresto. Pero peor aún, que pasara una década para lograr el arresto.

Por último, precisa resaltar que, de los testimonios presentados, no se puede concluir que el peticionario conocía de la orden de arresto en su contra. A poco, lo único que revelan los autos es que cuando la señora Rivera Rodríguez presentó la denuncia, y, **previo a que se le radicaran cargos**, confrontó al peticionario, ergo, para entonces no existía una orden de arresto .[56] Además, la última vez que la señora Rivera Rodríguez vio al peticionario en la casa de su tía, tampoco se había emitido la *Orden de arresto*.[57] De otra parte, cabe resaltar que, aunque el tribunal de instancia determinó que el peticionario tenía conocimiento del proceso judicial en su contra, también afirmó lo siguiente:

> La referida intervención de la Sra. Rivera Rodríguez [sobre confrontar al peticionario con los asuntos que dieron paso a los casos del título] se llevó a cabo *luego* de presentada la querella, pero *antes* de la expedición de una orden de arresto por un tribunal competente, por lo que **no cabe hablar en esa coyuntura de que el imputado conociera de la existencia de una orden de arresto en su contra**, tal como lo expresa uno de los criterios en la Regla 51, pues la misma no se había expedido en ese entonces.[58]

En vista de todo lo anterior, y de las propias conclusiones a las que llegó el tribunal de instancia, colegimos que no se pudo demostrar bajo el estándar de prueba aplicable, que el peticionario tuviese conocimiento de la *Orden de arresto* en su contra.

Forzoso es concluir que, conforme a la prueba desfilada, quedó prístinamente claro que, en el caso del título, el Estado se cruzó de brazos, no actuó y de los autos no se sostiene una

---

[56] Apéndice del recurso, pág. 64.
[57] *Íd.*, a las pág. 62-64.
[58] *Íd.*, a la pág. 74.

justificación que mueva a esta Curia a considerar que tal omisión estuvo justificada, más bien, el Estado se cruzó de brazos y quedó inerte. Por consiguiente, aunque el peticionario no pasó prueba en cuanto a que las acciones del Estado lo colocaron en un estado de indefensión, los testimonios de los agentes demostraron que la falta de diligencia en tramitar la *Orden de arresto* dentro del término prescriptivo correspondiente anuló la posibilidad de que se cumpliese con los postulados del debido proceso de ley, colocando al peticionario en un estado de indefensión. Es decir, la inacción e inercia del Estado en este caso inevitablemente colocó a los ciudadanos, a quienes viene llamado a servir, en un estado total de desprotección.

Así, pues, tras examinar el marco doctrinal que antecede, en unión a los hechos que rodean el presente caso y que se desprenden en la relación procesal antes expuesta, así como luego de examinar con detenimiento la *Resolución* recurrida y el error esgrimido por el peticionario, no queda otra alternativa que disponer que el error esgrimido fue cometido. A tenor, aunque de ordinario le debemos gran deferencia a las determinaciones de foro primario, en el presente caso procede que intervengamos dado el error cometido por el tribunal recurrido, con el fin de evitar un fracaso a la justicia.[59] Es por lo anterior que procede revocar la *Resolución* recurrida.

IV

Por los fundamentos que anteceden, se *expide* el auto de *Certiorari* y se revoca la *Resolución* recurrida. En consecuencia, se desestiman las denuncias instadas contra el señor Rivera Rodríguez.

---

[59] *Pueblo v. Rivera Montalvo*, supra, a la pág. 373. *Pueblo v. Irizarry*, supra, a las págs. 788–789.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones